60 F.3d 128
 42 Fed. R. Evid. Serv. 904
 UNITED STATES of America, Appellee,
v.
Joseph JACKSON; Kevin Anthony Richardson; Ryan O. Ragland;
Robert G. Ragland; Abdullah Muhammad; Michael Elliot;
Darnell Gordino; Frederic Mitchell; Dana Gordino; Terry
Kierce and James Moore, Defendants,
Lopez D. Jones, also known as "Donald Lopez Jones", also
known as "Rock", also known as "L", also known as "Lopez",
also known as "Loggie"; Che Collins, Reorn Mark Jones, also
known as "Mark", also known as "Jonesy", also known as "J",
and Michael Barretto, also known as "Chico", also known as
"Suave", and Kevin Blackmon, also known as "WB", also known
as "Waterbed", also known as "Kev", Defendants-Appellants.
 Nos. 158, 159, 143, 160, 163, Dockets 93-1619, 93-1620,
93-1621, 93-1622, 93-1628.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 14, 1994.
Decided July 14, 1995.
 
 Gerald Bodell, Stratford, CT and Timothy P. Pothin, New Haven, CT, for defendant-appellant Lopez D. Jones.
 William F. Tiernan, New Haven, CT, for defendant-appellant Che Collins.
 William B. Barnes, Fairfield, CT (Rosenstein & Barnes, Fairfield, CT), for defendant-appellant Reorn Mark Jones.
 Frank J. Riccio, Bridgeport, CT, for defendant-appellant Michael Barretto.
 Vito A. Castignoli, Milford, CT, for defendant-appellant Kevin Blackmon.
 Christopher F. Droney, U.S. Atty., New Haven, CT, Anthony E. Kaplan, Peter D. Markle, H. Gordon Hall, Asst. U.S. Attys., David P. Gold, Sr. Asst. U.S. Atty., for appellee.
 Before NEWMAN, Chief Judge, WALKER, and CALABRESI, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Five defendants-appellants appeal their judgments of conviction and sentences following a jury trial in the United States District Court for the District of Connecticut (Ellen Bree Burns, District Judge ). Their appeal involves a series of challenges commonly brought in drug conspiracy appeals, "the disposition of which will have little precedential import." United States v. Rodriguez, 943 F.2d 215, 216 (2d Cir.1991) (limiting opinion to single issue of precedential import). We write this opinion to address two issues of first impression: 1) whether the United States Sentencing Commission exceeded its statutory authority in treating a drug conspiracy conviction as a predicate for sentencing a defendant as a career offender pursuant to U.S.S.G. Sec. 4B1.1; and 2) whether Federal Rule of Evidence 615, which requires sequestration of witnesses except in three limited circumstances, exempts from sequestration no more than one government case agent under each exception.
 
 BACKGROUND
 
 2
 Appellants Lopez Jones, Reorn Mark Jones, Michael Barretto, Che Collins, and Kevin Blackmon were among sixteen people indicted following a lengthy investigation of the "Jungle Boys" drug gang in New Haven, Connecticut. All five were tried by a jury and convicted of conspiring to distribute narcotics in violation of 21 U.S.C. Sec. 846. Lopez and Reorn Jones were also convicted as supervisors of a continuing criminal enterprise under 21 U.S.C. Sec. 848. In addition, Reorn Jones was found guilty of acting as an accessory in the sale of cocaine, 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and as an accessory in the sale of cocaine within 1000 feet of a school, 21 U.S.C. Secs. 841(a)(1), 860 and 18 U.S.C. Sec. 2. Collins was convicted of the sale of cocaine, 21 U.S.C. Sec. 841(a)(1), and the distribution of cocaine within 1000 feet of a school, 21 U.S.C. Secs. 841(a)(1), 860, as well as conspiracy to possess with intent to distribute cocaine, 21 U.S.C. Sec. 846.
 
 
 3
 As a career offender, Blackmon was sentenced to 292 months imprisonment. Reorn Jones and Collins each received a 292-month term of incarceration, while Lopez Jones and Barretto were sentenced to 328 and 168 months, respectively. The five defendants each received five years of supervised release as well as the obligatory assessments.
 
 
 4
 While the appellants present a number of challenges to their convictions and/or sentences, we limit our discussion to the career offender and Rule 615 issues, which were raised by four of the five appellants. We have considered the remaining claims of the defendants-appellants, and we find them to be without merit.
 
 DISCUSSION
 I. Career Offender Sentence
 
 5
 Blackmon challenges his sentence as a career offender on the ground that a prior drug conspiracy conviction cannot be a predicate for career offender status. We find this argument to be without merit.
 
 
 6
 The Sentencing Guidelines describe three criteria for sentencing a defendant as a career offender:
 
 
 7
 (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
 
 
 8
 U.S.S.G. Sec. 4B1.1. A "controlled substance offense" includes any "offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. Sec. 4B1.2(2). Application Note 1 broadens the definition to include "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."
 
 
 9
 In this case, Blackmon was over eighteen years of age and had two prior convictions, one for manslaughter and one for assault in the second degree with a firearm. As a result, he satisfied the first and third elements of Sec. 4B1.1, a fact that Blackmon does not contest. Because he was convicted of conspiracy to distribute a controlled substance, Judge Burns found that he fulfilled the second element as well and sentenced him as a career offender. The sole issue for decision therefore is whether the term "controlled substance offense" includes a drug conspiracy conviction.
 
 
 10
 In claiming that it does not, Blackmon does not challenge the application of the Sentencing Guidelines; Judge Burns clearly followed the explicit language of the guidelines and commentary. Instead, Blackmon argues that the Sentencing Commission exceeded its statutory mandate under 28 U.S.C. Sec. 994(h) by including drug conspiracies as controlled substance offenses.
 
 
 11
 We begin by noting that even though the broadened definition of "controlled substance offenses" articulated in the commentary does not appear in an actual guideline, it is binding authority. Commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, --- U.S. ----, ----, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993); see also U.S.S.G. Sec. 1B1.7 (Failure to follow commentary that interprets or explains the application of a guideline "could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal."). Application Note 1 is authoritative because it interprets and explains Sec. 4B1.2 by listing offenses that constitute "controlled substance offenses" and "crimes of violence." See Stinson, --- U.S. at ----, 113 S.Ct. at 1920 (finding commentary to Sec. 4B1.2, which stated that "the offense of unlawful possession of a firearm by a felon" was not a "crime of violence," to be interpretive and therefore authoritative). As we explain below, this interpretation is not inconsistent with, let alone a violation of, 28 U.S.C. Sec. 994(h) or any other statute. Consequently, the commentary is binding authority.
 
 
 12
 In challenging the Sentencing Commission's authority to promulgate Application Note 1, Blackmon relies principally on United States v. Price, 990 F.2d 1367 (D.C.Cir.1993), the first case to address this issue. In Price, the D.C. Circuit focused on the Commission's explicit statement in the Background Commentary to Ch. 4, Pt. B that 28 U.S.C. Sec. 994(h) mandated the adoption of the career offender guideline. Although the court recognized that the Commission's enabling legislation, 28 U.S.C. Sec. 994(a), gave it discretionary authority to establish guidelines for the determination of sentences, it noted the Commission's failure to state expressly that its promulgation of Ch. 4, Pt. B was based on Sec. 994(a). As a result, the D.C. Circuit concluded that the sole authority for the guideline provisions of that part came from Sec. 994(h). Id. at 1369.
 
 
 13
 The Price court then found that 28 U.S.C. Sec. 994(h) provided no authority to include drug conspiracies as predicates for a controlled substance offense. Section 994(h), in spelling out the authority for career criminal sentences for offenders convicted of a felony that is a crime of violence or a controlled substance offense, defines a controlled substance offense as those "described in" 21 U.S.C. Secs. 841, 952(a), 955, 955a, and 959, none of which is a conspiracy offense. 28 U.S.C. Secs. 994(h)(1)(B), (2)(B); Price, 990 F.2d at 1368-69. The court distinguished between conspiracies and their underlying substantive crimes on the basis that a conspiracy "requires only the meeting of the conspirators' minds, plus an overt act that need not itself be in any way criminal." Id. at 1369. Based in part on this distinction, the court concluded that the list of offenses "described in" Sec. 994(h) was exclusive and that Application Note 1 was beyond the Commission's statutory authority. Id.
 
 
 14
 Since the Price decision, a majority of the circuits to consider the question have rejected Price. See United States v. Williams, 53 F.3d 769, 772-73 (6th Cir.1995); United States v. Weir, 51 F.3d 1031, 1031 (11th Cir.1995); United States v. Piper, 35 F.3d 611, 618 (1st Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); United States v. Kennedy, 32 F.3d 876, 888 (4th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995); United States v. Damerville, 27 F.3d 254, 257 (7th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 445, 130 L.Ed.2d 355 (1994); United States v. Hightower, 25 F.3d 182, 187 (3d Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994); United States v. Allen, 24 F.3d 1180, 1186 (10th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 493, 130 L.Ed.2d 404 (1994); United States v. Heim, 15 F.3d 830, 831 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994). Only the Fifth and Eighth Circuits have followed the D.C. Circuit's decision. United States v. Mendoza-Figueroa, 28 F.3d 766, 767-68 (8th Cir.1994) (opinion vacated, rehearing en banc granted); United States v. Bellazerius, 24 F.3d 698, 701 (5th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 375, 130 L.Ed.2d 326 (1994). We join those circuits that have parted company with Price and hold that Application Note 1 was fully authorized.
 
 
 15
 First, we do not believe that the sole basis for the Commission's authority to devise the career offender guidelines stems from 28 U.S.C. Sec. 994(h). It seems to us quite plain that Sec. 994(a) also provides such authority. As the introductory commentary in the Sentencing Guidelines makes clear, the "guidelines and policy statements promulgated by the Commission are issued pursuant to Section 994(a) of Title 28, United States Code." U.S.S.G. Ch. 1, Pt. A, intro. comment. n. 1; see also Damerville, 27 F.3d at 257. We do not interpret the Commission's specific reference to Sec. 994(h) in the Background Commentary to Ch. 4, Pt. B to preclude reliance on Sec. 994(a) as authority to promulgate that part. See Weir, 51 F.3d at 1032; Kennedy, 32 F.3d at 888; Damerville, 27 F.3d at 257; Allen, 24 F.3d at 1186-87. Certainly nothing in the commentary or guidelines suggests that the Commission treated Sec. 994(h) as "the sole legal authority for promulgating the career offender guidelines." Heim, 15 F.3d at 832; see also Hightower, 25 F.3d at 186. Instead, we view the reference to Sec. 994(h) as suggesting an additional, rather than an exclusive, basis of authority.
 
 
 16
 Even if Sec. 994(h) were the sole authority relied upon for Ch. 4, Pt. B, however, we do not interpret the statute and its legislative history as imposing an exclusive list of offenses that would subject a defendant to a career offender sentence. Section 994(h) simply provides a list of offenses that subject an offender to a sentence at or near the maximum if other criteria are met. Nothing in the statute indicates that such an enhancement applies only to those listed offenses. See Hightower, 25 F.3d at 187 (Section 994(h) "does not define the only crimes for which the commission may specify a sentence at or near the maximum; it merely declares that the enumerated crimes must be so treated." (quotation omitted)). In fact, the legislative history is quite to the contrary. Congress intended that subsection 994(h)(2) be treated as a floor, not a ceiling, for the types of offenses for which the Commission should specify sentences near the maximum. See Heim, 15 F.3d at 832. For example, the Senate Report states that "subsections (h) and (i) are not necessarily intended to be an exhaustive list of types of cases in which ... terms at or close to authorized maxima should be specified." S.Rep. No. 225, 98th Cong., 2d Sess. 176 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3359; see also Piper, 35 F.3d at 618; Kennedy, 32 F.3d at 889; Hightower, 25 F.3d at 185; Allen, 24 F.3d at 1187.
 
 
 17
 Finally, in concluding that the promulgation of Application Note 1 was within the Commission's authority, we accept the Price court's observation that conspiracies involve "quite different elements from [the] substantive crime." See Price, 990 F.2d at 1369. Nevertheless, we find it more relevant that Congress has manifested its intent that drug conspiracies and underlying offenses should not be treated differently: it imposed the same penalty for a narcotics conspiracy conviction as for the substantive offense. See 21 U.S.C. Sec. 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."); see also Damerville, 27 F.3d at 257. Our view is fully consistent with the purpose behind Sec. 994(h) to impose "substantial prison terms ... on repeat violent offenders and repeat drug traffickers," S.Rep. No. 225, 98th Cong., 2d Sess. 175 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3358. See Kennedy, 32 F.3d at 889 (noting that by "including conspiracy as a career offender offense, the Commission ensured that persons engaged in a collective drug distribution scheme would receive the same treatment as individual violators of similarly serious drug trafficking laws"). For these reasons, we conclude that both 28 U.S.C. Secs. 994(a) and 994(h) vested the Commission with authority to expand the definition of "controlled substance offense" to include aiding and abetting, conspiring, and attempting to commit such offenses. See U.S.S.G. Sec. 4B1.2, comment. n. 1.
 
 
 18
 While, until now, we have not set forth our reasoning on this issue, we note that two of our prior decisions in the area are in accord with our holding today. First, in United States v. Whitaker, 938 F.2d 1551 (2d Cir.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 977, 117 L.Ed.2d 141 (1992), we found, without comment, that drug conspiracy convictions pursuant to 21 U.S.C. Secs. 846 and 963 qualify as controlled substance offenses. Id. at 1552-53. Second, in United States v. Liranzo, 944 F.2d 73 (2d Cir.1991), we held that criminal facilitation of the sale of cocaine did not constitute a controlled substance offense because facilitation was not listed in Application Note 1 as a basis for a career offender enhancement and unlike conspiracy or attempt, facilitation does not require a finding of intent to commit the underlying substantive offense. Id. at 78-79.
 
 
 19
 Accordingly, we confirm the statutory authority underlying Application Note 1 to Sec. 4B1.2 and affirm Blackmon's enhanced sentence as a career offender.
 
 II. Sequestration of Witnesses
 
 20
 Appellant Lopez Jones joins appellants Collins and Barretto, both arguing pro se, in claiming that Judge Burns violated Federal Rule of Evidence 615 in failing to sequester from the trial the three case agents who were present at the government's table. Rule 615 requires the trial court, at "the request of a party [to] order witnesses excluded so that they cannot hear the testimony of other witnesses." The rule, however,
 
 
 21
 does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.
 
 
 22
 Rule 615 codified a well-established common law tradition of sequestering witnesses "as a means of discouraging and exposing fabrication, inaccuracy, and collusion." Fed.R.Evid. 615, Advisory Committee Notes; see also Government of the Virgin Islands v. Edinborough, 625 F.2d 472, 475, 476 (3d Cir.1980); Frideres v. Schiltz, 150 F.R.D. 153, 158 (S.D. Iowa 1993) (noting that "[s]equestering witnesses to assist in ascertaining truth is at least as old as the Bible"). The Supreme Court observed that this practice, which goes back to "our inheritance of the common Germanic law," serves two purposes: it "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." Geders v. United States, 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976).
 
 
 23
 In this case, Barretto's counsel moved to have "all nonessential witnesses ... sequestered from the courtroom." Lopez Jones's and Collins's counsel joined in the motion. The former added his concerns that in addition to Agent Kline, who was the designated case agent, Agent Williams and Officer Detective Kendall would be sitting at the government's table. Any ambiguity as to whether Lopez Jones's counsel was concerned with the agents' presence at the table or in the courtroom was resolved by his statement that Agent Williams and Officer Kendall "shouldn't be sitting there while all the other witnesses are testifying." The government responded by noting that Detective Kendall, Special Agent Williams, and Special Agent Kline were all case agents. Stressing the complexity of the case, the government made clear that the agents were needed because there "is a voluminous amount of evidence and electronic equipment to control." To downplay the risks that the witnesses would influence each other's testimony, the government pointed out that the three witnesses would be "in and out of the courtroom." It did, however, concede that "[w]e have no problem to a sequestration order as to those three individuals." Reorn Jones's counsel accepted the need for one government case agent, but objected to the argument that more than one was necessary, "even in a case of this size." Thereafter, the district court overruled the objections without comment.
 
 
 24
 The government now argues that Lopez Jones raised the Rule 615 claim for the first time on appeal. Collins and Barretto raised this claim pro se after the government filed its brief, and the government did not address this issue in its supplemental brief. Therefore, it is not apparent whether the government believes that Collins and Barretto failed to raise the Rule 615 argument below. In any event, even though the exchange concerning sequestration did not explicitly refer to Rule 615, the defendants clearly expressed their wishes to have the government witnesses sequestered. Thus, we reject the government's position and find that a proper motion was made below.
 
 
 25
 In asserting that the district court erred, the appellants rely on the reasoning of other circuits that the government may only exempt one agent for each subprovision of Rule 615. See United States v. Pulley, 922 F.2d 1283, 1286 (6th Cir.) (allowing exemption of only one agent under 615(2) and one agent under 615(3)), cert. denied, 502 U.S. 815, 112 S.Ct. 67, 116 L.Ed.2d 42 (1991), United States v. Farnham, 791 F.2d 331, 335 (4th Cir.1986). This Circuit has not yet addressed whether more than one agent may be exempted pursuant to each subprovision of Rule 615. We have only noted in dicta that two agents could appropriately be exempted from the Rule, one under the second subprovision and the other under the third. United States v. Rivera, 971 F.2d 876, 889-90 (2d Cir.1992).
 
 
 26
 One might interpret the language of Rule 615, as well as the advisory notes, as suggesting that the drafters contemplated the exemption of only one person for each subprovision. For example, the exemptions in the Rule are described in the singular and the advisory notes discuss the government's frequent use of "a police officer" or "an investigative agent" to assist with its case. Fed.R.Evid. 615, Advisory Committee Notes (emphasis added); cf. Pulley, 922 F.2d at 1286 (finding no reason to "convert the singular into the plural" in interpreting Rule 615). Nevertheless, we would be reading the language too narrowly to assume that the use of the singular implies that the drafters intended to allow only one exemption per provision. The Rule and the Notes say nothing further to indicate that, in a case in which two agents are "essential to the presentation of the party's cause," for example, only one could be exempt from the opposing party's request to sequester the agents.
 
 
 27
 While we would expect it to be the rare case when a district judge exempts more than one witness under a particular subprovision of Rule 615, we hold that a district court judge has discretion to do so. The advisory notes to Rule 615 do state that the Rule treats the matter of sequestration as "one of right," as opposed to being "committed to the [trial judge's] discretion." Although we interpret this, consistent with the Rule's use of the word "shall," to require the sequestration of witnesses upon a party's request, we read the caselaw to provide the judge with discretion in determining whether the witness in question falls within one of the Rule 615 exemptions. See United States v. Payan, 992 F.2d 1387, 1394 (5th Cir.1993) (The trial judge has discretion to determine how many witnesses may be excused from sequestration.); Rivera, 971 F.2d at 889 ("It is within a trial court's discretion to exempt the government's chief investigative agent from sequestration...."). Because the Rule does not expressly limit to one the number of exemptions per provision, we conclude that this discretion extends to deciding whether, in a particular case, more than one witness should be exempt under a particular subprovision.
 
 
 28
 In making a Rule 615 ruling, a district court must exercise discretion, and among the factors that might usefully inform the exercise of such discretion are: 1) how critical the testimony in question is, that is, whether it will involve controverted and material facts; 2) whether the information is ordinarily subject to tailoring, see United States v. Prichard, 781 F.2d 179, 183 (10th Cir.1986) (Testimony regarding "simple objective facts" is "ordinarily not subject to tailoring, and, if it were, it could have been exposed easily."), such that cross-examination or other evidence, cf. United States v. Womack, 654 F.2d 1034, 1040-41 (5th Cir.1981), cert. denied, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982), could bring to light any deficiencies; 3) to what extent the testimony of the witness in question is likely to encompass the same issues as that of other witnesses, see Pulley, 922 F.2d at 1286-87; 4) the order in which the witnesses will testify, see id. at 1286; 5) any potential for bias that might motivate the witness to tailor his testimony, see United States v. Agnes, 753 F.2d 293, 307 (3d Cir.1985) (Sequestration found proper when government feared defendant's girlfriend would have both the ability and motive to modify her testimony in favor of defendant.); and 6) if the court is considering exempting the witness from sequestration under Rule 615(3), whether the witness's presence is "essential" rather than simply desirable.
 
 
 29
 Because a court may only decline to grant a party's request to sequester particular witnesses under one of the Rule 615 exemptions, the rule carries a strong presumption in favor of sequestration. The party opposing sequestration therefore has the burden of demonstrating why the pertinent Rule 615 exception applies, Edinborough, 625 F.2d at 474, and "why the policy of the Rule in favor of automatic sequestration is inapplicable in that situation," id. at 476. The party requesting sequestration should thereafter have a chance to demonstrate its necessity. Id. Such an exchange affords the court full opportunity to consider the competing interests and, if it denies the motion, to explain the factors it considered in reaching its decision. Id.
 
 
 30
 In this case, the record is scant as to why the presence of more than one agent was essential. The government expanded the usual request by asking that three rather than one case agent remain in the courtroom. It sought to meet the requirement of Rule 615(3) by pointing out that the case was complex and that there was a "voluminous amount of evidence and electronic equipment to control." The prosecutor also sought to minimize the significance of the agents' remaining in the courtroom by assuring the trial judge that the agents would be "in and out of the courtroom."
 
 
 31
 The district court made no explicit finding as to whether these reasons alone justified the conclusion that more than one case agent was "essential to the presentation of the party's cause" pursuant to Rule 615(3). Instead, the court merely overruled the objections. It would have been helpful to our review of the Rule 615 issue if the trial judge had articulated the basis for the exercise of her discretion. We are skeptical as to whether the reasons advanced by the government are sufficient to support the lower court's ruling. For example, we doubt that simply the voluminousness of the evidence and the amount of electronic equipment to be used would normally justify such a ruling. Except in unusual circumstances, it would seem that when the government requires more assistance than a single case agent could provide, non-witness personnel could generally be employed to help operate equipment and handle the evidence. In those cases, it would be up to the government to make some showing of a need to use the additional agents it planned to call as witnesses for those administrative tasks in the courtroom. In this case, however, we need not decide whether the judge acted within her discretion since we believe that, for the reasons discussed below, reversal would not be required, even if she abused her discretion.
 
 
 32
 This Circuit has not yet articulated the appropriate test for determining whether a Rule 615 violation amounts to reversible error. Recently, we have suggested in dicta that the harmless error standard applies. See Rivera, 971 F.2d at 890 ("[E]ven when a proper request has been made and a trial court has erred [under Rule 615], courts have ruled that not even Rule 52(a) harmless error, much less Rule 52(b) plain error, occurred."). Sister circuits exploring this issue agree that the appellate court must consider whether the party moving for sequestration was prejudiced by the error. See, e.g., United States v. Ramirez, 963 F.2d 693, 704 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 388, 121 L.Ed.2d 296 (1992); Pulley, 922 F.2d at 1286; United States v. Conners, 894 F.2d 987, 991 (8th Cir.1990); United States v. Brewer, 947 F.2d 404, 411 (9th Cir.1991); Farnham, 791 F.2d at 335; Prichard, 781 F.2d at 183; Edinborough, 625 F.2d at 474. The circuits differ, however, as to who has the burden on the issue of prejudice. The majority of courts to consider this question requires the movant to show that the failure to sequester resulted in prejudice. See, e.g., United States v. Sykes, 977 F.2d 1242, 1245 (8th Cir.1992); Prichard, 781 F.2d at 179; Edinborough, 625 F.2d at 474.
 
 
 33
 A few courts reject this approach, however, and apply the harmless error test, placing the burden on the government to prove that failure to sequester was harmless, i.e., that it did not prejudice the movant. See, e.g., Pulley, 922 F.2d at 1286; Farnham, 791 F.2d at 335. But see United States v. Greschner, 802 F.2d 373, 376 (10th Cir.1986) (applying harmless error analysis, yet putting burden on defendant to establish burden was prejudicial), cert. denied, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). These courts reason that a violation of Rule 615 should be presumed to result in prejudice, thereby requiring reversal unless the presumption is rebutted. See Brewer, 947 F.2d at 411 (" '[W]hen a court fails to comply with Rule 615, prejudice is presumed and reversal is required unless it is manifestly clear from the record that the error was harmless or unless the prosecution proves harmless error by a preponderance of the evidence.' ") (quoting United States v. Ell, 718 F.2d 291, 293-94 (9th Cir.1983)). According to this rationale, any other approach places an unreasonable, even impossible, burden on the defendant. For example, the Fourth Circuit interprets
 
 
 34
 the mandatory, unambiguous language of the rule to reflect the drafters' recognition that any defendant [claiming there was a Rule 615 violation] would find it almost impossible to sustain the burden of proving the negative inference that the second agent's testimony would have been different had he been sequestered. A strict prejudice requirement of this sort would be not only unduly harsh but also self-defeating, in that it would swallow a rule carefully designed to aid the truth-seeking process and preserve the durability and acceptability of verdicts. Rule 615 thus reflects an a priori judgment in favor of sequestration, and the exceptions should be construed narrowly in favor of the party requesting sequestration.
 
 
 35
 Farnham, 791 F.2d at 335.
 
 
 36
 We believe the correct view is that the burden to demonstrate lack of prejudice, or harmless error, properly falls on the party that had opposed sequestration.* First, we agree that placing the burden of persuasion on the movant virtually demands the impossible; only with 20/20 hindsight could a party demonstrate what would have been said had a witness been sequestered. Moreover, placing the harmless error burden on the party that had opposed sequestration is consistent with Rule 615's express presumption in favor of sequestration. Thus, we hold that where case agents have been exempted in violation of Rule 615, a new trial is in order "unless it is manifestly clear from the record that the error was harmless or unless the prosecution proves harmless error by a preponderance of the evidence." Brewer, 947 F.2d at 411 (quoting Ell, 718 F.2d at 293-94).
 
 
 37
 Applying this analysis, we conclude that the case before us "is the exceptional case because the facts are such that any presumption of prejudice is rebutted." Farnham, 791 F.2d at 336. Even without the testimony of the three agents, the evidence presented in favor of the convictions was overwhelming. The evidence adduced included testimony of twenty-four witnesses and a large number of exhibits such as seventy-five tape-recorded intercepted telephone conversations; narcotics purchased by undercover agents; narcotics, narcotics paraphernalia, and firearms, all seized by the government; video and photographic surveillance; and documentary evidence. Particularly compelling was the testimony of three cooperating defendants--Joseph Jackson, Michael Elliot, and Kevin Richardson--which was fully corroborated by the intercepted telephone conversations and other evidence. All three cooperating defendants testified as to Lopez Jones's leadership role. In addition, Michael Elliot testified as to Barretto's participation in the drug conspiracy, which was corroborated by another witness and by intercepted calls from Barretto. Finally, an undercover purchase of cocaine from Collins, surveillance photographs, Kevin Richardson's testimony, and intercepted conversations, in which Collins participated concerning his provision of cocaine to the Jungle Boys' operation, all supported Collins's guilty verdict.
 
 
 38
 Furthermore and significantly, there was virtually no overlap in the testimony of the agents and other witnesses, except in one noted instance. See Pulley, 922 F.2d at 1286-87. Over the course of the trial, Agent Williams testified about the background of the investigation, the means of intercepting the conversations, a search related to Collins's arrest, and fifteen intercepted telephone conversations. Detective Kendall testified as to the preparation of the transcript of the intercepted telephone conversations, an overview of the complex in which the Jungle Boys were located, the arrest of Joseph Jackson, a number of search warrants, and twelve intercepted phone calls. Agent Kline's testimony was limited to one intercepted conversation and a portion of the surveillances. One of the surveillances was related to a phone conversation about which Agent Williams also testified. However, at the government's request, Agent Kline was excused when Agent Williams testified on the subject. Finally, the testimony of the three cooperating defendants concerned various intercepted conversations.
 
 
 39
 The parties have only identified one notable overlap in all of this testimony. Both Agent Williams and Detective Kendall identified the voice of one of the participants in a particular intercepted telephone conversation as Lopez Jones, whereas cooperating defendant Richardson could not identify the voice as that of Jones. In our view, this minimal overlap is insufficient in the context of the remaining evidence supporting the convictions to constitute prejudice to the defendants. Consequently, we find that the Rule 615 error was harmless.
 
 CONCLUSION
 
 40
 The judgment of the district court is affirmed.
 
 
 
 *
 We note that at first glance United States v. Pellegrino, 470 F.2d 1205 (2d Cir.1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 310 (1973), might be read to suggest the contrary. There we held that in allowing an FBI agent, who was the last witness to be called, to sit at the prosecution table during the trial, the trial court did not abuse its discretion. Part of our holding was based on the fact that "[n]o showing of prejudice flowing from the order of Government's proof [was] made by appellants." Id. Even so, we do not find Pellegrino instructive here since our decision was not based on Rule 615 and the exclusion of a single agent from sequestration does not generally constitute error under Rule 615