**In re OMEPRAZOLE PATENT LITIGATION**

No. MDL NO. 1291.
No. M–21–81.

United States District Court,
S.D. New York.

Feb. 28, 2002.

Errol B. Taylor, Fredrick M. Zullow, Robert L. Baechtold, Charles P. Baker, Gregory B. Sephton and John D. Carlin of Fitzpatrick, Cella, Harper & Scinto, New York City, for plaintiffs AstraZeneca, et al.

Edgar H. Haug, Jeffrey A. Hovden, Charles J. Raubicheck and Christian M. Smolizza of Frommer Lawrence & Haug LLP, New York City, for defendant Genpharm, Inc.

Brian M. Poissant, F. Dominick Cerrito, Ronald M. Daugnault and Leo Merken of Pennie & Edmonds LLP, New York City, for defendants Kremers Urban Development Co. et al.

Louis M. Solomon, Margaret A. Dale and Colin A. Underwood of Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York, NY., and James V. Costigan and Martin P. Endres of Hedman & Costigan, P.C., New York City, for defendant Andrx Pharmaceuticals, Inc.

Andrew J. Miller, Brian Moriarty, David Novack, Bruce Radin and Frank D. Rodriguez of Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, for defendants Cheminor Drugs, et al.

### Order

JONES, District Judge.

Plaintiffs move pursuant to Federal Rule of Evidence 615 to sequester Defendants' experts Dr. Story and Dr. Porter from the other's testimony during the presentation of Defendants' invalidity proof. Dr. Story will be testifying first for Genpharm, and Dr. Porter will be testifying second for Cheminor. Both Genpharm and Cheminor oppose Astra's motion pursuant to Rule 615(3) on the grounds that their experts are "essential" to their management of this litigation. For the follow-

ing reasons, the court GRANTS in part and DENIES in part Astra's motion.

■ Rule 615 "exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." *Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). "Because a court may only decline to grant a party's request to sequester particular witnesses under one of the Rule 615 exemptions, the rule carries a strong presumption in favor of sequestration." *United States v. Jackson,* 60 F.3d 128, 135 (2d Cir.1995); *see, e.g., Opus 3 Ltd. v. Heritage Park, Inc.,* 91 F.3d 625, 628 (4th Cir.1996). However, by its very terms, Rule 615(3) "does not authorize exclusion ... of a person whose presence is shown by a party to be essential to the presentation of the party's cause." The determination of whether a witness is essential under Rule 615(3) lies in the discretion of the district court. *See, e.g., Polythane Sys. v. Marina Ventures Int'l,* 993 F.2d 1201, 1209 (5th Cir.1993); *Morvant v. Construction Aggregates, Corp.,* 570 F.2d 626, 630 (6th Cir.1978). The party seeking exemption for a witness under Rule 615(3) has the burden of showing that the witness' presence is "essential." *See, e.g., Jackson,* 60 F.3d at 135; *Government of the V.I. v. Edinborough,* 625 F.2d 472, 475 (3d Cir. 1980). However, any reasonable, substantiated representation by counsel that the witness' presence is essential will usually be sufficient to meet that burden. *See, e.g., Malek v. Federal Ins. Co.,* 994 F.2d 49, 54 (2d Cir.1993).

■ For the most part, Genpharm and Cheminor oppose Astra's motion simply because Dr. Story and Dr. Porter are their invalidity experts. Usually an expert is either responding to the theories of an adversary's expert or is basing his opinion entirely on facts adduced by fact witnesses at trial. Such experts are infrequently sequestered. *See Morvant,* 570 F.2d at 629–30 ("Theoretically at least, the presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and will in most cases be beneficial, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves ...."). However, courts have rejected the argument that, consistent with Rule 703, Rule 615(3) impliedly exempts expert witnesses who express opinions based on the facts of the case. *See, e.g., Opus 3,* 91 F.3d at 629; *Woodson v. McGeorge Camping Ctr., Inc.,* 42 F.3d 1387 (4th Cir.1994) (unpublished table decision); *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1373–74 (5th Cir.1981); *Morvant,* 570 F.2d at 630.

This motion presents a unique situation—both Genpharm and Cheminor may rely on the evidence presented by both experts, and Dr. Story and Dr. Porter are both being offered by Defendants to opine that Plaintiffs' patents are invalid. To the extent that their opinions were disclosed in expert reports, they are not inconsistent; they are complementary. After reading the reports, the court cannot conceive of any way in which these two experts could be considered "adverse" on the issue of invalidity, and the court will not permit either expert to offer opinions at trial that were not disclosed in his original expert report. In addition, neither expert is providing any objective facts upon which the other expert needs to rely, and neither expert is relying on the opinions of the other as a basis for his own conclusions.

■ Given the unique situation at issue, the factors to be considered in making a determination under Rule 615(3) are: (1) whether the testimony will involve contro-

verted and material facts, (2) whether the information is subject to tailoring such that cross-examination or other evidence could bring to light any deficiencies, (3) to what extent the testimony of the witnesses encompasses the same issues, (4) the order in which the witnesses will testify, (5) any potential bias that might motivate the witness to tailor his testimony, and (6) whether the witness' presence is truly essential or merely desirable. *Jackson,* 60 F.3d at 135. Of course, not all of those factors are relevant in every case.

After weighing the *Jackson* factors listed and considering the unique circumstances of this case, the court concludes that Dr. Porter must be sequestered from the testimony of Dr. Story until after Dr. Porter has himself testified during Cheminor's case-in-chief on invalidity.[1] In particular, the second, third, fourth, and fifth factors weigh heavily in favor of sequestering Dr. Porter from the testimony of Dr. Story. There is potential for tailoring of the testimony of these witnesses. If permitted to hear the testimony of the first invalidity expert, Dr. Story, the second invalidity expert, Dr. Porter, could conform his phraseology and opinions to those of Dr. Story. *See Miller,* 650 F.2d at 1374 (noting that exempting the defendant's expert from sequestration under Rule 615 "would be questionable" in a copyright infringement case where the expert would be analyzing the similarity of two works after the plaintiff analyzed the same two works).

In this case, subtle distinctions between Defendants' and Plaintiffs' proposed claim constructions and the meanings of various terms in the patent and the prior art can dramatically affect the import of certain testimony. It would be difficult, if not impossible, for Plaintiffs to bring to light on cross-examination such subtle changes in the testimony of one expert, which would, nevertheless, enhance the consistency of their opinions. *Cf. Jackson,* 60 F.3d at 135 ("Testimony regarding 'simple objective facts' is 'ordinarily not subject to tailoring, and, if it were, it could have been exposed easily.'") (quoting *United States v. Prichard,* 781 F.2d 179, 183 (10th Cir. 1986)). Moreover, any chance Plaintiffs would have to expose such inconsistencies on cross-examination would be impaired if Dr. Porter were present in the courtroom during Astra's cross-examination of Dr. Story.

With respect to the third factor, the court finds, after a thorough review of the expert reports of both Dr. Story and Dr. Porter, that their testimony will encompass many of the same issues. Although some of the documents each expert cites are different, the content of many of the documents overlaps, and the ultimate conclusions of the two experts—finding invalidity—are the same. As to the fourth factor, Dr. Porter will testify after Dr. Story. Lastly, under the fifth factor, the court finds a potential motivation for tailoring the expert testimony for the purposes of consistency, which could lend additional credibility to the opinion of each expert.

In opposing Astra's motion, Cheminor makes three arguments to support its claim that Dr. Porter's presence during Dr. Story's testimony is "essential." None of the arguments is persuasive. First, Cheminor argues that Dr. Porter will pro-

---

1. For the same reasons that the court sequesters Dr. Porter from the testimony of Dr. Story until after the close of Dr. Porter's own testimony, the court also precludes Dr. Porter from reading the transcript of Dr. Story's trial testimony prior to taking the witness stand. *See Miller,* 650 F.2d at 1373 ("The opportunity to shape testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court.")

vide counsel with assistance in determining whether Cheminor should cross-examine Dr. Story. If this concern were not completely evanescent, it might support denial of Astra's motion under Rule 615(3). However, as discussed previously, the problem of cross-examining Dr. Story is unlikely to arise since his opinions on invalidity are clearly not adverse to Cheminor's position. Moreover, Cheminor has been in possession of Dr. Story's expert report, which contains the only opinions about which the court will permit Dr. Story to testify, since August 23, 2000. Any consultation counsel for Cheminor needs with respect to the decision to cross-examine Dr. Story can and should be done on the basis of that document and Dr. Story's deposition testimony.

Second, Cheminor claims Dr. Porter should be permitted to hear and comment upon the "facts or data" upon which Dr. Story bases his opinion. The court finds this argument disingenuous. Essentially, Cheminor attempts to circumvent the rulings made by the court in its Memorandum and Order dated February 26, 2002, which precluded Dr. Porter from opining or relying on documents if his opinions concerning them were either undisclosed or disclosed belatedly. Acceptance of Cheminor's argument would vitiate this court's previous rulings about the permissible scope of Dr. Porter's testimony. Discovery in these cases was consolidated; all of the documents, facts, and opinions available to and commented on by Dr. Story were available to Cheminor and Dr. Porter as well. If Dr. Porter had opinions concerning the documents or opinions disclosed in Dr. Story's expert report, they should have been disclosed prior to trial.

Third, Cheminor argues that Dr. Porter should have access to Dr. Story's testimony so that Dr. Porter can avoid repetitive testimony about the documents previously addressed by Dr. Story. In accordance with this court's February 26, 2002, Memorandum and Order, only four documents will be discussed by both experts. The court is willing to permit any slight duplication of testimony required to allow Dr. Porter to address all four of those documents to the full extent of the opinions contained in his original expert report. Cheminor's concerns about limited redundancy in Dr. Porter's testimony does not make Dr. Porter's presence "essential" under Rule 615(3).

While Dr. Porter's presence during the testimony of Dr. Story may be desirable for Cheminor, it is not essential. Moreover, the court will permit Dr. Porter to review the transcript of Dr. Story's testimony in its entirety once Dr. Porter has completed his testimony in Cheminor's case-in-chief on invalidity. At that point, Dr. Porter will be available to Cheminor to identify any issues that may necessitate rebuttal testimony, and Cheminor may seek permission from the court to permit Dr. Porter to address those issues.[2]

■ Because Dr. Story will have finished his testimony in Genpharm's case-in-chief on invalidity before Dr. Porter takes the stand, none of the *Jackson* factors discussed above in relation to Dr. Porter counsel for sequestering Dr. Story. Genpharm argues that Dr. Story's presence during Dr. Porter's testimony, which will occur after Dr. Story has finished his own testimony, is essential to the presentation of the rest of Genpharm's invalidity case, particularly rebuttal evidence. Consistent with this court's ruling that Dr. Porter will

---

**2.** Of course, the same would be true for any new theories of validity raised by Astra during its cross-examination of Dr. Story; if permit-

ted by the court, those new theories could be addressed by Dr. Porter on rebuttal.

be permitted to review Dr. Story's testimony to advise Cheminor about rebuttal issues, the court will not sequester Dr. Story from Dr. Porter's testimony. Dr. Story may either be present at trial or review the transcript of Dr. Porter's testimony to advise Genpharm on those same issues.

For the foregoing reasons, the court sequesters Dr. Porter from the testimony of Dr. Story during Genpharm's case-in-chief on invalidity. The court also precludes Dr. Porter from reading the transcript of that testimony until after Dr. Porter has concluded his testimony during Cheminor's case-in-chief on invalidity. The remainder of Astra's motion is denied.

SO ORDERED: