Merrimack
No. 2010-692

THE STATE OF NEW HAMPSHIRE

v.

JOSHUA GUILD

Argued: February 15, 2012
Opinion Issued: April 10, 2012

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, Joshua Guild, appeals his conviction by a jury on one count of felonious sexual assault, *see* RSA 632-A:3, III (Supp. 2011), and one count of aggravated felonious sexual assault (AFSA), *see* RSA 632-A:2, II (Supp. 2011), both involving the same minor victim. He contends that the Superior Court (*McNamara*, J.): (1) violated New Hampshire Rule of Evidence 615 and RSA 632-A:6, IV (2007) by failing to sequester the minor victim's mother; (2) erroneously denied his motion to

disqualify a juror without first conducting a *voir dire* of the juror; and (3) erroneously denied his motion to dismiss the AFSA charge. We affirm.

The jury could have found the following facts. The assaults in this case occurred in February 2006, when the victim was approximately ten and one-half years old. The defendant, who was her aunt's boyfriend, put his hand under the victim's shirt, then slid it under her underwear and rubbed her buttocks. He then touched her genitals over her underwear and asked if he could touch her vagina. When she said, "[n]o," he moved his hand back to her buttocks. The victim reported the assaults immediately to her mother and, later that day, to the police.

## I. Sequestration of Victim's Mother

The defendant first argues that the trial court violated RSA 632-A:6, IV and Rule 615 when it denied his request to sequester the victim's mother during the victim's testimony. Rule 615 provides:

> At the request of a party the court *shall in criminal cases* and may in civil cases order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person or a victim of the crime, or (2) an officer or employee of a party in a civil case which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

(Emphasis added.) RSA 632-A:6, IV similarly provides:

> At the request of a party the court *shall*, in cases under RSA 632-A [Sexual Assault and Related Offenses], order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This does not authorize exclusion of a party who is a natural person or a victim of the crime, or a person whose presence is shown by a party to be essential to the presentation of the party's cause.

(Emphasis added.) The defendant argues that Rule 615 and RSA 632-A:6, IV mandate that the court sequester a witness in a criminal trial upon request. The defendant contends that the trial court violated both the rule and the statute when it denied his request to sequester the victim's mother, and that this error requires automatic reversal.

██ Rule 615 and RSA 632-A:6, IV "codified a well-established common law tradition of sequestering witnesses as a means of discouraging and

exposing fabrication, inaccuracy, and collusion." *United States v. Jackson*, 60 F.3d 128, 133 (2d Cir. 1995) (quotation omitted; discussing Federal Rule of Evidence 615); *see* N.H. R. Ev. 615 Reporter's Notes. The Supreme Court has observed that this practice, which is "part of our inheritance of the common Germanic law," serves two purposes: (1) "[i]t exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses"; and (2) "it aids in detecting testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87 (1976) (quotation omitted); *see Jackson*, 60 F.3d at 133.

For the purposes of this appeal, we assume, without deciding, that the trial court erred when it denied the defendant's request to sequester the victim's mother. *But see Government of Virgin Islands v. Edinborough*, 625 F.2d 472, 474-75 (3d Cir. 1980) (trial court has discretion to allow parent of young witness to remain in courtroom under exception for witnesses who are "essential" to presentation of party's case); *Com. v. Bonner*, 601 N.E.2d 32, 34, 35 (Mass. App. Ct. 1992) (no error to allow mother of fourteen-year-old victim to remain in courtroom during victim's testimony). However, we decline the defendant's invitation to rule that this error mandates reversal without further inquiry.

To support his argument, the defendant relies upon *People v. Dixon*, 177 N.E.2d 206 (Ill. 1961), *State v. DiModica*, 192 A.2d 825 (N.J. 1963), *overruled on other grounds by State v. Czachor*, 413 A.2d 593 (N.J. 1980), and *Vaughn v. State*, 479 S.W.2d 873 (Ark. 1972), none of which stand for the *per se* rule of reversal that the defendant advances. Finding little support for the defendant's *per se* reversal rule, we turn to other jurisdictions, which have addressed the standard of review of a trial court's sequestration decision.

Federal courts construing Federal Rule of Evidence 615, which is similar to New Hampshire Rule 615, have decided that "[a]lthough exclusion of witnesses [in a criminal trial] is mandatory, . . . a trial court's violation of [Federal] Rule 615 . . . is grounds for reversal . . . *only* if the party requesting exclusion was substantially prejudiced by the error." Annotation, *Exclusion of Witnesses Under Rule 615 of Federal Rules of Evidence*, 181 A.L.R. FED. 549, 568 (2002) (emphasis added). "Some courts have placed the burden of showing prejudice on the party requesting exclusion, . . . but a number of courts have taken the view that prejudice resulting from a trial court's violation of [Federal] Rule 615 is presumed and the burden is on the party opposing sequestration to show that the violation was not prejudicial or was harmless error." *Id.* In the Third, Fifth, Sixth and Eighth Circuit Courts of Appeals, the burden of proof is on the party requesting exclusion of witnesses. *See Edinborough*, 625 F.2d at 476; *United States v. Green*, 293 F.3d 886, 891-92 (5th Cir. 2002); *William L.*

*Comer Family Equity Pure Trust v. C.I.R.*, 958 F.2d 136, 140-41 (6th Cir. 1992); *Hollman v. Dale Electronic, Inc.*, 752 F.2d 311, 313 (8th Cir. 1985). By contrast, in the Second, Fourth and Ninth Circuit Courts of Appeals, prejudice from the failure to exclude witnesses is presumed, and the burden is on the party opposing sequestration to show that any error was harmless. *See Jackson*, 60 F.3d at 136-37; *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986); *United States v. Seschillie*, 310 F.3d 1208, 1214-17 (9th Cir. 2002).

State courts are similarly divided upon this question, with some state courts placing the burden of proving prejudice upon the party seeking sequestration, *see, e.g., State v. Morgan*, 797 A.2d 616, 632 (Conn. App. Ct. 2002), and others presuming prejudice and placing the burden of proving harmless error upon the party opposing sequestration, *see, e.g., Stafford v. State*, 736 N.E.2d 326, 331 (Ind. Ct. App. 2000).

 In a criminal case, "[w]e believe the correct view is that the burden to demonstrate lack of prejudice, or harmless error, properly falls on the party that had opposed sequestration." *Jackson*, 60 F.3d at 136. "First, . . . placing the burden of persuasion on the movant virtually demands the impossible; only with 20/20 hindsight could a party demonstrate what would have been said had a witness been sequestered." *Id.* "Moreover, placing the harmless error burden on the party that had opposed sequestration is consistent with Rule 615's express presumption in favor of sequestration." *Id.* As the Fourth Circuit Court of Appeals has aptly explained:

> [W]e understand the mandatory, unambiguous language of the rule to reflect the drafters' recognition that any defendant . . . would find it almost impossible to sustain the burden of proving the negative inference that [the non-sequestered witness's] testimony would have been different had he been sequestered. A strict prejudice requirement of this sort would be not only unduly harsh but also self-defeating, in that it would swallow a rule carefully designed to aid the truth-seeking process and preserve the durability and acceptability of verdicts. Rule 615 thus reflects an *a priori* judgment in favor of sequestration, and the exceptions should be construed narrowly in favor of the party requesting sequestration.

*Farnham*, 791 F.2d at 335. Accordingly, we hold that when, in a criminal trial, a trial court has violated Rule 615 and RSA 632-A:6, IV by failing to sequester a witness, a new trial is in order unless the State proves that any error was harmless beyond a reasonable doubt. *See Jackson*, 60 F.3d at 137 (applying federal harmless error standard).

■ Applying this analysis, we conclude that in the case before us any presumption of prejudice has been rebutted. *See id.* To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict. *State v. Peters*, 162 N.H. 30, 36 (2011). An error in failing to sequester a witness may be harmless beyond a reasonable doubt if, even without the non-sequestered witness's testimony, the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight and the non-sequestered witness's testimony is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *See id.; see also Jackson*, 60 F.3d at 137.

The defendant was charged with one count of felonious sexual assault, specifically "intentionally touching" the victim's buttocks with his hand. He was also charged with one count of AFSA, specifically "intentionally touching the [victim's] genitalia with his hand over her clothing."

Here, as in *State v. Gonzalez*, 150 N.H. 74, 79 (2003), and *State v. Lemieux*, 136 N.H. 329, 331-32 (1992), the evidence most damaging to the defendant was the victim's detailed description of the assaults. At the trial, which began less than a month before the victim's fifteenth birthday, the victim was able to recall events that had occurred as many as four years earlier. *See Gonzalez*, 150 N.H. at 79. She testified that the assaults occurred at the home her Aunt Cassie shared with the victim's grandmother and uncle. The night before the assaults, the victim had slept in Cassie's bedroom at her grandmother's home. The defendant was Cassie's boyfriend, and he too had stayed the night.

On the morning of the assaults, the victim's parents had "dropped off" the victim's sisters at the grandmother's house, and the victim and her sisters had gone to Cassie's bedroom to watch a movie with Cassie and the defendant. The victim testified that her sisters soon became bored and that they and Cassie went upstairs to play cards, leaving the victim and the defendant alone in Cassie's bedroom. The victim and the defendant were on Cassie's bed when he asked the victim "to scoot over." When she did, he put his arm around her and began rubbing her back under her shirt. The defendant then "slid his hand down to [the victim's] butt . . . under [her] underwear." The victim testified: "He kind of went under the underwear — I mean over the underwear and slid his hand over to the pants and asked if — or patted down and asked can I touch this, which was my vagina." She testified that at this point, his hand was over her underwear, and when she told him that he could not touch her vagina, he "went back over to my butt."

In addition to the victim's testimony, the jury heard from Cassie, who testified that she saw the victim run up from the bedroom, "upset . . . [and] shaking." The victim told Cassie: "Auntie, I don't think [the defendant is] the guy for you." The victim's father also testified that when he arrived at

the grandmother's house that morning, he saw that the victim's face was "totally red," and he could tell that she had been crying. He expressed concern because "[s]he had totally been crying. Her face was bloody red." The victim's older sister also testified that she was upstairs playing cards while the victim was downstairs in Cassie's bedroom with the defendant. After she finished her card game, she saw the victim come upstairs in tears.

The victim's mother did not testify about the assaults. Her testimony was cumulative of testimony the jury had already heard regarding what happened when she arrived at Cassie's house on the morning of the assaults, and the victim's contacts with the police. However, the victim's mother's testimony "was not a mere echo" of the victim's testimony. *Bonner*, 601 N.E.2d at 34. For instance, the victim testified that she told her mother that the defendant had "hurt" her; her mother said that the victim told her that the defendant had "touched" her. Additionally, the victim testified that when her mother arrived at the house, the defendant was in the bathroom. The victim's mother testified that when she arrived at the house, she walked downstairs to Cassie's bedroom, where she saw the victim lying on the bed with Cassie and the defendant.

■ Because the defendant's conviction is supported by other substantial evidence, and because the evidence does not support a conclusion that the victim's mother tailored her testimony to the victim's testimony, we hold that any error in failing to sequester the victim's mother was harmless beyond a reasonable doubt. *Cf. id.* at 34-35.

## II. *Voir Dire of Juror*

The defendant next asserts that the trial court erred when it denied his motion to disqualify a juror without first conducting *voir dire* of the juror. After closing arguments and the charge to the jury, the defendant raised concerns about the juror's behavior:

> [DEFENSE COUNSEL]: It was brought to my attention that juror No. 4 was — and I noticed a little of it — but was rolling her eyes, laughing, gesticulating during my closing argument. I think she's evidenced that she has already made up her mind in this case, quite clearly by how she reacted to me during my closing argument.
>
> Specifically, it's been brought to my attention that she was laughing at me at one point. I hope that's not a reflection on my abilities, but the evidence as she believes it, but I feel it's revealed that she has not remained, to this point, fair and impartial, as she's required to do.

. . . .

[DEFENSE COUNSEL]: And I understand that the law presumes the jurors are going to follow the instructions. However, I think by her actions she's evidenced that she hasn't done that.

THE COURT: Well, I think it's very difficult to make a presumption based on a juror's body language. I'll also say I was watching the jury, and I did not observe anything that led me to believe that the juror had so clearly made up her mind that she would not follow the instructions. I think the law is I have to presume she'll follow the instructions, so I am going to — I assume it's a motion to disqualify a juror.

[DEFENSE COUNSEL]: Yes, it is, Your Honor. Yes.

THE COURT: I'm going to deny that —

■ On appeal, the defendant contends that because he articulated a sufficient basis to suspect that the juror was biased, the trial court was required to *voir dire* the juror. This argument is not preserved for our review because, as the defendant concedes, he never asked the trial court to *voir dire* the juror. The defendant argues that preservation is not necessary because the trial court had an independent duty to question the juror. To support this argument, he relies upon cases concerning the trial court's role in investigating "a colorable claim that a jury may be biased or tainted by extrinsic contact or communication," *State v. Rideout*, 143 N.H. 363, 365 (1999). When such a colorable claim is made, the court "must undertake an adequate inquiry to determine whether the alleged incident occurred and, if so, whether it was prejudicial." *Id.* This line of cases is inapplicable when, as here, there is *no* allegation of any extrinsic contact or communication. *See State v. Bader*, 148 N.H. 265, 279 (2002). Because the defendant did not preserve this argument for our review, we decline to address it.

### III. Conviction on AFSA Charge Against Weight of Evidence

■ Finally, the defendant argues that the trial court erred when it denied his motion to dismiss the AFSA charge because the jury's verdict on the AFSA charge was against the weight of the evidence. However, the defendant's motion to dismiss was made at the close of the State's case, and at that juncture was, and could only have been, a challenge to the sufficiency of the evidence. As we recently clarified in *State v. Hill*, 163 N.H.

394 (2012), such a motion does not preserve an objection to the jury verdict based upon the weight of the evidence. Accordingly, because the defendant's argument is not preserved for our review, we decline to address it substantively.

*Affirmed.*

HICKS, CONBOY and LYNN, JJ., concurred.