14-1018
*Singh v. Barr*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————

August Term, 2019

(Argued: September 5, 2019     Decided: September 24, 2019)

Docket No. 14-1018
—————————

JOHN DEREK JAMES JUNIOR SINGH,

*Petitioner*,

– v. –

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent*.

—————————

B e f o r e :

KATZMANN, *Chief Judge*, WALKER and PARK, *Circuit Judges*.
—————————

Petition for review of a decision of the Board of Immigration Appeals affirming a decision by an immigration judge denying petitioner's application for asylum and for withholding and deferral of removal under the Immigration and Nationality Act and the Convention Against Torture.

Petitioner argues that his second-degree assault conviction did not qualify as an aggravated felony crime of violence, that the agency erred in finding that he committed a particularly serious crime, and that his denial of relief was otherwise premised on flawed factual findings. Because we conclude that Singh's assault conviction qualifies as an aggravated felony crime of violence, and because his remaining legal arguments lack merit, his petition for review is DENIED.

—————————

DEV B. VISWANATH, The Banad Law Offices, P.C., New York, NY, *for Petitioner*.

KEITH I. MCMANUS, *for* Joseph H. Hunt, Assistant Attorney General, Jessica E. Burns, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., *for Respondent*.

—————————

PER CURIAM:

Petitioner John Derek James Junior Singh seeks review of a March 10, 2014 decision of the Board of Immigration Appeals ("BIA") affirming an October 22, 2013 decision by an immigration judge ("IJ") denying Singh's application for asylum and for withholding and deferral of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). Because we conclude that Singh's conviction of second-degree assault with a deadly weapon or dangerous instrument under New York Penal Law ("NYPL")

§ 120.05(2) is an aggravated felony crime of violence, and because his remaining legal arguments lack merit, his petition for review is **DENIED**.

## BACKGROUND

Singh was born in Guyana and admitted to the United States as a lawful permanent resident in 1994. In 2000, at the age of 17, he was convicted of attempted robbery and adjudicated as a youthful offender. In 2003, while on probation for that offense, Singh pled guilty to one count of second-degree assault, in violation of NYPL § 120.05(2), and was sentenced to one year in prison.

In 2013, Singh received a Notice to Appear and was placed in removal proceedings on the ground that his assault conviction rendered him deportable. Singh conceded during his hearings before the IJ that he was removable for having committed an aggravated felony crime of violence, and that he was ineligible for asylum for the same reason. *See* 18 U.S.C. § 16; 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii), 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i). Singh sought withholding of removal under the INA and withholding and deferral of removal under the CAT.

3

Both the Government and Singh introduced documentary evidence regarding country conditions in Guyana, and Singh elicited testimony from an expert on the country's treatment of deportees. Singh also testified and offered a statement and testimony from Shiraz Alli, a Guyanese immigrant who had been deported to Guyana, had returned to the United States, and had again been placed in removal proceedings while seeking asylum. The IJ found that Singh and the expert were credible, but that Alli was not due to several discrepancies between Alli's affidavit and testimony.

The IJ agreed with Singh that he was removable because his conviction under NYPL § 120.05(2) was an aggravated felony crime of violence. The IJ also determined that Singh's assault conviction was a "particularly serious crime" and that he was therefore ineligible for withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii). The IJ noted that the police report of the assault stated that Singh had pulled a machete out of his pants and slashed the victim across the face. Singh testified, in contrast, that the victim had threatened him, and that he grabbed a wire cutter or box cutter nearby and cut the victim's head or face in self-defense. While recognizing that Singh claimed to have acted in self-defense, the IJ determined that he could not "re-litigate [Singh's] criminal case or look

4

behind his guilty plea," and concluded that the crime was particularly serious given "[t]he violent nature of the offense and the lengthy prison sentence coupled with the fact that th[e] crime was itself a violation of [Singh's] existing probation." Certified Administrative Record 46.

In the alternative, the IJ held that he would have denied withholding of removal and CAT relief even if Singh's conviction had not been a particularly serious crime. Here, the IJ found that Singh had failed to show that it was more likely than not that he would be persecuted based on a protected ground, or that he would be tortured at the behest of or with the acquiescence of Guyanese officials. This finding was unaltered by Singh and the expert's testimony, or by Singh's documentary evidence.

Singh appealed the IJ's decision to the BIA, which dismissed the appeal. After stating that Singh had conceded removability, the BIA agreed that Singh's crime was "particularly serious" under the INA. *See* 8 U.S.C. § 1231(b)(3)(B)(ii). The BIA noted, as the IJ did, that Singh denied using a machete and said that he acted in self-defense, but the BIA held that the police report, Singh's concession that he cut the victim's face, and Singh's guilty plea supported the IJ's conclusion that the crime was particularly serious.

5

Singh also challenged the IJ's use of the presentence report ("PSR") from his youthful offender conviction in determining that his conviction was a particularly serious crime. The BIA found, however, that the PSR was properly admitted, that the IJ had used the PSR only to confirm that Singh's assault violated his probation, and that the IJ's decision was based on the violent nature of the assault rather than anything in the PSR. Because it affirmed the IJ's particularly serious crime designation, the BIA did not address the IJ's findings regarding the likelihood of persecution.

As Singh was deemed to have committed a particularly serious crime, he was ineligible for all forms of relief except for deferral of removal under the CAT. The BIA upheld the IJ's decision to deny Singh such relief. It first rejected Singh's claim that the IJ erred in finding that Alli was not credible, holding that the inconsistencies between Alli's statement and testimony were material and supported the IJ's adverse credibility determination. It then agreed with the IJ that Singh's evidence was insufficient to show that it was more likely than not that he would be tortured by the Guyanese government or by gangs with government acquiescence, as is required for deferral of removal under the CAT.

6

Singh petitioned this Court for review and now raises the following arguments: First, Singh contends that his conviction under NYPL § 120.05(2) no longer qualifies as an aggravated felony crime of violence after the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Second, Singh argues that the BIA and IJ erred in finding that his assault was a "particularly serious crime," and in considering the PSR from his prior youthful offender conviction and the police report from his assault offense. And third, Singh challenges several factual determinations underlying the BIA and IJ's denial of withholding of removal and CAT relief.

## DISCUSSION

"In the circumstances of this case, where the BIA affirmed the IJ's decision but did not reach the IJ's alternative finding, we review the IJ's decision as modified by the BIA." *Wei Sun v. Sessions*, 883 F.3d 23, 27 (2d Cir. 2018).[1] "[W]hen the petitioner is removable by reason of having committed a covered criminal offense"—including an aggravated felony crime of violence, 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A)(iii)—we lack jurisdiction to consider anything

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

7

beyond "constitutional claims or questions of law." *Ortiz-Franco v. Holder*, 782

F.3d 81, 88 (2d Cir. 2015). "Questions of law are reviewed de novo." *Wei Sun*, 883

F.3d at 27.

## I. Whether NYPL § 120.05(2) Is a Crime of Violence

Singh first contends that his second-degree assault conviction under NYPL

§ 120.05(2) no longer qualifies as an aggravated felony crime of violence. In

*Dimaya*, the Supreme Court struck down as unconstitutionally vague the residual

clause of the definition of "crime of violence" in 18 U.S.C. § 16(b), which is

incorporated into the INA's definition of "aggravated felony" in 8 U.S.C.

§ 1101(a)(43)(F). *See* 138 S. Ct. at 1210. This Court had previously held that assault

under NYPL § 120.05(2) falls within § 16(b)'s ambit. *See Morris v. Holder*, 676 F.3d

309, 316 (2d Cir. 2012). Singh therefore conceded removability, and the IJ and

BIA confirmed it, based on *Morris* and § 16(b)'s residual clause. After *Dimaya*,

however, an offense can be deemed a crime of violence only under 18 U.S.C.

§ 16(a), which requires that the offense have "as an element the use, attempted

8

use, or threatened use of physical force against the person or property of another."[2]

To make a crime of violence determination, courts use the categorical approach, which ignores the circumstances of the particular defendant's crime and asks instead what is "the minimum criminal conduct necessary to sustain a conviction" under the relevant statute. *Santana v. Holder*, 714 F.3d 140, 143 (2d Cir. 2013). As NYPL § 120.05 contains multiple subsections, this Court must apply the modified categorical approach, which allows a court to look at materials such as the indictment or plea agreement in the underlying case to determine the subsection under which the defendant was convicted. *See Banegas Gomez v. Barr*, 922 F.3d 101, 108 (2d Cir. 2019).

The record is clear, and the parties agree, that Singh pled guilty to NYPL § 120.05(2). That provision states that a person is "guilty of assault in the second degree when[,] . . . [w]ith intent to cause physical injury to another person, he

---

[2] Singh argues that we should not decide the § 16(a) issue in the first instance because the BIA never considered it. However, "[b]ecause we review the agency's interpretations of federal and state criminal laws—including 18 U.S.C. § 16 and [New York] criminal law—de novo, this is not a situation where we would benefit from the agency's reasoning on remand." *Banegas Gomez v. Barr*, 922 F.3d 101, 107 (2d Cir. 2019).

causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." The term "physical injury" is defined as "impairment of physical condition or substantial pain." *Id.* § 10.00(9). A "deadly weapon" is "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged, or a switchblade knife, pilum ballistic knife, metal knuckle knife, dagger, billy, blackjack, plastic knuckles, or metal knuckles." *Id.* § 10.00(12). And a "dangerous instrument" is "any instrument, article or substance, . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." *Id.* § 10.00(13).

To constitute a crime of violence, an offense must require "*violent force—that is, force capable of causing physical pain or injury to another person.*" *Johnson v. United States*, 559 U.S. 133, 140 (2010); *see Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) ("The ordinary meaning of this term ['crime of violence'], combined with § 16's emphasis on the use of physical force against another person . . . , suggests a category of violent, active crimes . . . ."). NYPL § 120.05(2) meets this bar.

We recently considered a similar Connecticut statute, which "requires that a defendant cause 'serious physical injury' to the victim by means of a deadly weapon or dangerous instrument," and we explained that "[s]uch a crime appears on its face to involve the use of 'violent' physical force, as required by *Johnson*." *Banegas Gomez*, 922 F.3d at 109. Admittedly, § 120.05(2) requires the causation of "physical injury," rather than "serious physical injury." But assuming without deciding that this difference could be material, the deadly weapon or dangerous instrument element makes obvious that the statute requires the use of violent force. The deadly weapons listed in NYPL § 10.00(12), when used with intent to cause physical injury, inherently carry the risk of causing serious physical injury. And by the statute's own terms, to be a "dangerous instrument," an item must be wielded such that it "is readily capable of causing death or other serious physical injury." NYPL § 10.00(13). *Cf. United States v. Ramos*, 892 F.3d 599, 610-11 (3d Cir. 2018) (finding Pennsylvania's analogous assault statute to be a crime of violence under the elements clause of the U.S. Sentencing Guidelines).

This conclusion is confirmed by our previous holding that NYPL § 120.05(2) is a violent felony under the elements clause of the Armed Career

Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i), a provision essentially identical to § 16(a). *United States v. Walker*, 442 F.3d 787, 788-89 (2d Cir. 2006) (per curiam). As we noted in *Walker*, "[t]o . . . cause physical injury by means of a deadly weapon or dangerous instrument is necessarily to . . . use 'physical force,' on any reasonable interpretation of that term." *Id.* at 788. And as we have explained elsewhere, "the identical language of the elements clauses of 18 U.S.C. § 16(a) and § 924(e)(2)(B)(i) means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute." *Stuckey v. United States*, 878 F.3d 62, 68 n.9 (2d Cir. 2017).

Singh offers two counterarguments, neither of which has merit. He claims first that any offense that is considered a crime of violence under the residual clause of § 16(b) cannot be a crime of violence under § 16(a) because § 16 uses the word "or" between the two subsections. In this instance, though, the word "or" indicates overlapping and equally applicable subdivisions, rather than mutually exclusive alternatives. Indeed, "while § 16(b) is broader than § 16(a) in the sense that physical force need not actually be applied, it contains the same formulation . . . [as] in § 16(a): the use of physical force against the person or property of another." *Leocal*, 543 U.S. at 11.

12

Singh also argues, as have other litigants before him, that the phrase "use of physical force" does not extend to some applications of his crime of conviction that do not require the defendant to physically attack the victim. Singh raises the examples of electrocuting someone and of setting a vicious dog loose in an area with the intent of harming someone. Yet as this Court has noted, "the relevant force is the impact of the substance [or weapon] on the victim, not the impact of the user on the substance [or weapon]." *Villanueva v. United States*, 893 F.3d 123, 129 (2d Cir. 2018). Therefore, indirect methods of inflicting serious physical injury still meet the physical force requirement of § 16(a). *See Banegas Gomez*, 922 F.3d at 108.

Finally, we requested supplemental briefing from Singh and the Government about whether NYPL § 120.05(2) allows for the imposition of liability based on a defendant's omission to act—and, if so, whether § 120.05(2) nevertheless qualifies as a crime of violence. The parties did not identify any instances in which such liability has been imposed based on an omission, and we have not found any examples. "[T]o show a predicate conviction is not a crime of violence requires more than the application of legal imagination to the statute's language." *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018). Instead, "there

13

must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence." *Id.* While Singh has offered hypothetical scenarios in which liability might be imposed based on an omission to act, we do not find these hypotheticals to be realistic, and we agree with the Third Circuit that "it is nearly impossible to conceive of a scenario in which a person could knowingly or intentionally injure, or attempt to injure, another person with a deadly weapon without engaging in at least some affirmative, forceful conduct." *Ramos*, 892 F.3d at 612.

We therefore conclude that Singh's conviction falls within § 16(a)'s definition of a crime of violence.[3] As such, he is removable and ineligible for asylum. *See* 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii), 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i). Moreover, in reviewing his petition, we lack jurisdiction to consider anything beyond "constitutional claims or questions of law." *Ortiz-Franco*, 782 F.3d at 88.

---

[3] As we find that NYPL § 120.05(2) qualifies as a crime of violence under § 16(a), we need not address the Government's argument that *Dimaya* does not affect this case because Singh, through his attorney, conceded removability before the IJ and did not challenge removability before the BIA.

## II. The "Particularly Serious Crime" Analysis

Singh next challenges the BIA's determination that his assault was a "particularly serious crime" and that he was therefore ineligible for withholding of removal under the INA and CAT. *See* 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). Namely, Singh argues that the IJ's use of the PSR from his prior youthful offender conviction and the police report from his assault offense violated due process.[4]

First, Singh complains that the PSR from his youthful offender conviction was irrelevant, so its admission violated due process. We disagree. As the BIA found, the IJ did not consider any facts in the PSR beyond noting that Singh was on probation when he committed the assault. Moreover, any due process violation would be harmless, as Singh himself testified during the IJ hearing that his assault had violated his probation.

---

[4] Singh also argues that the IJ and BIA gave insufficient weight to his testimony about the circumstances of his offense. Singh's "argument that the IJ balanced improperly those factors that the IJ could consider" is an "unreviewable" factual challenge to the BIA's decision. *Argueta v. Holder*, 617 F.3d 109, 113 (2d Cir. 2010) (per curiam).

15

Second, Singh argues that the police report of his assault contained hearsay. But "the Federal Rules of Evidence do not apply in removal proceedings; rather, evidence is admissible provided that it does not violate the alien's right to due process of law." *Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008) (per curiam). This standard is "satisfied in immigration proceedings if the evidence is probative and its use is fundamentally fair." *Id.* Singh contested before the BIA the relative weight given to the report as compared to his own testimony, but the Government notes that he did not challenge—nor did the BIA address—its admission into evidence or its reliability. "Where, as here, the government points out that an issue was not properly raised below, we must decline to consider that issue absent extraordinary circumstances" not present here. *Y.C. v. Holder*, 741 F.3d 324, 336 (2d Cir. 2013).

## III.    CAT Deferral

Finally, Singh contests the denial of CAT deferral. As with Singh's other challenges, our jurisdiction "is limited to review of constitutional claims and questions of law." *Ortiz-Franco*, 782 F.3d at 86. Singh raises only factual arguments: that the IJ's adverse credibility determination against Alli was erroneous, and that Singh met his burden of proof to establish eligibility for CAT

16

relief. Where, as here, a petition "essentially disputes the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion," this Court lacks jurisdiction to review the challenge. *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006).

## CONCLUSION

For the foregoing reasons, Singh's petition for review is **DENIED**.