18-338-cr
United States of America v. Zimmian Tabb

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
_____

AUGUST TERM, 2019

(ARGUED: NOVEMBER 4, 2019    DECIDED:    FEBRUARY 6, 2020)

No. 18-338
_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

ZIMMIAN TABB,

*Defendant-Appellant.*

Before:        SACK and HALL, *Circuit Judges*, and RAKOFF, *District Judge*.[1]
_____

At issue in this case is whether defendant-appellant Zimmian Tabb's prior convictions for attempted assault in the second degree under N.Y. Penal Law ("N.Y.P.L.") § 120.05(2) and federal narcotics conspiracy under 21 U.S.C. § 846 constitute predicate offenses for purposes of the career offender sentencing enhancement of the United States Sentencing Guidelines § 4B1.1. The district court (Hellerstein, *J.*) applied the enhancement because it found that Tabb's conviction under N.Y.P.L. § 120.05(2) constituted a predicate "crime of violence"

_____

[1] Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

and that Tabb's conviction under 21 U.S.C. § 846 constituted a predicate "controlled substance offense." The Court agrees with both findings. Accordingly, application of the career offender sentencing enhancement was appropriate and the judgment of the district court is AFFIRMED.

———————————————

FOR APPELLEE:                          WON S. SHIN, Assistant United States
                                       Attorney (Geoffrey S. Berman,
                                       United States Attorney for the Southern
                                       District of New York, David W. Denton, Jr.,
                                       Rebekah Donaleski, Assistant United States
                                       Attorneys, *on the brief*), New York, NY

FOR DEFENDANT-APPELLANT:     RICHARD E. SIGNORELLI, Law Office of
                                       Richard E. Signorelli, New York, NY

———————————————

RAKOFF, *District Judge*:

Zimmian Tabb appeals from a judgment of conviction entered on January 25, 2018 and a Sentencing Order entered on January 26, 2018 in the United States District Court for the Southern District of New York (Hellerstein, *J.*). Tabb contends that he was improperly classified as a career offender based on his prior convictions for attempted assault in the second degree under N.Y. Penal Law ("N.Y.P.L.") § 120.05(2) and federal narcotics conspiracy under 21 U.S.C. § 846. Because we agree that both crimes constitute predicate offenses for purposes of the career offender sentencing enhancement of the United States

2

Sentencing Guidelines ("U.S.S.G.") § 4B1.1, we affirm the judgment of the district court.

I.    Facts

On May 5, 2017, Tabb pled guilty to aiding and abetting the distribution of 3.75 grams of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(C) and 18 U.S.C. § 2. The plea agreement did not stipulate whether Tabb's prior convictions qualified him for the career offender enhancement of U.S.S.G. § 4B1.1. Under U.S.S.G. § 4B1.1, a defendant is a career offender if (1) he is over 18; (2) the present offense is a felony crime of violence or a controlled substance offense; and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.2 sets out the definitions of both a "crime of violence" and a "controlled substance offense."

At sentencing, the district court concluded that Tabb had two prior felony convictions for purposes of the sentencing enhancement. First, Tabb's 2014 conviction for conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 constituted a predicate controlled substance offense. Second, Tabb's 2010 conviction for attempted assault in the

second degree in violation of N.Y. Penal Law ("N.Y.P.L.") § 120.05(2) constituted a predicate crime of violence.

Based on these prior convictions, the district court concluded that Tabb qualified for the career offender enhancement and calculated his Guidelines range to be 151 to 188 months' imprisonment. Without the career offender enhancement, Tabb's Guidelines range would have been 33 to 41 months.[2] Ultimately, the district court imposed a below-guidelines sentence of 120 months. Tabb appeals the judgment and sentencing order on the ground that he should not have been classified as a career offender. This Court reviews *de novo* a district court's interpretation of the Guidelines. *United States v. Matthews*, 205 F.3d 544, 545 (2d Cir. 2000).

II.     Analysis

Tabb argues that he should not have been classified as a career offender under U.S.S.G. § 4B1.1 because he did not have two predicate convictions. First, he argues that attempted assault in the second degree under N.Y. Penal Law § 120.05(2) is not a predicate conviction because it is not crime of violence within

---

[2] As this illustrates, the career offender enhancement often dwarfs all other Guidelines calculations and recommends the imposition of severe, even Draconian, penalties.

the relevant provision of U.S.S.G. § 4B1.2 (known as the "Force Clause"). Second, he argues that his narcotics conspiracy conviction under 21 U.S.C. § 846 is not a predicate conviction because it does not qualify as a controlled substance offense. Neither argument is persuasive.

A. Tabb's Conviction for Attempted Assault in the Second Degree (N.Y.P.L § 120.05(2))

Tabb first argues that attempted assault in the second degree under N.Y.P.L § 120.05(2) is not a crime of violence under the Force Clause of § 4B1.2. A person is guilty of second-degree assault under N.Y.P.L. § 120.05(2) when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." This qualifies as a "crime of violence" under the Force Clause (also sometimes referred to as the "Elements Clause") if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2.[3]

---

[3] A crime can also qualify as a "crime of violence" if it meets the sentencing guidelines' "enumerated offenses clause," or "is a murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." Because attempted assault in the second degree under N.Y.P.L. § 120.05(2) qualifies as a

U.S.S.G. § 4B1.2's Force Clause is identical to language in two other statutes: the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), and the definition of "crime of violence" under 18 U.S.C. § 16(a). "[T]he identical language of the elements clauses of 18 U.S.C. § 16(a) and [ACCA] means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute," as well as in interpreting U.S.S.G. § 4B1.2. *Stuckey v. United States*, 878 F.3d 62, 68 n.9 (2d Cir. 2017), *cert. denied*, 139 S. Ct. 161 (2018). Thus, in evaluating Tabb's claim, this Court is guided by its ACCA and § 16(a) jurisprudence.

Tabb first argues that attempted assault in the second degree under N.Y. Penal Law § 120.05(2) cannot be a crime of violence because the substantive crime of second-degree assault is not itself a crime of violence. To determine whether a state crime falls under the Sentencing Guidelines, the Second Circuit generally uses the "categorical approach" prescribed by the Supreme Court. *Taylor v. United States*, 495 U.S. 575, 600 (1990). Under this abstract approach, a court considers the "generic, contemporary meaning" of the crime in the guidelines, *id.* at 598, and then determines whether the crime committed by the

---

crime of violence under the Force Clause, we need not determine whether it would also meet the enumerated offenses clause definition of a crime of violence.

defendant falls under this "generic offense." The Court "ignores the circumstances of the particular defendant's crime and asks instead what is the minimum criminal conduct necessary to sustain a conviction under the relevant statute." *Singh v. Barr*, 939 F.3d 457, 462 (2d Cir. 2019) (internal quotation marks and citation omitted). "[O]nly if the statute's elements are the same as, or narrower than, those of the generic offense does the prior conviction serve as a predicate offense for a sentencing enhancement." *United States v. Castillo*, 896 F.3d 141, 149-50 (2d Cir. 2018) (internal quotation marks and citation omitted).

Tabb's argument that N.Y.P.L. § 120.05(2) is not a crime of violence under the categorical approach is severely undercut by this Court's holdings from the ACCA and § 16(a) contexts. In *United States v. Walker*, 442 F.3d 787 (2d Cir. 2006) (per curiam), this Court held that attempted assault in the second degree N.Y.P.L. § 120.05(2) is "categorically" a violent felony under ACCA because "[t]o (attempt to) cause physical injury by means of a deadly weapon or dangerous instrument is necessarily to (attempt to) use 'physical force,' on any reasonable interpretation of that term." *Id.* at 788. More recently, in *Singh v. Barr*, 939 F.3d 457 (2d Cir. 2019) (per curiam), the Court reaffirmed *Walker*'s holding and held that the substantive crime of second-degree assault under N.Y.P.L. § 120.05(2) is

also categorically a crime of violence under § 16(a)'s Force Clause. Thus, this Court has found that the substantive crime of N.Y.P.L. § 120.05(2) categorically "has as an element the use, attempted use or threatened use of physical force against the person of another" under both ACCA and § 16(a).

Tabb provides no reason why the result should be different under U.S.S.G. § 4B1.2. Indeed, Tabb largely relies on cases from both the ACCA and § 16(a) context to argue that second-degree assault under N.Y.P.L. § 120.05(2) is not a crime of violence. For example, Tabb relies on an earlier § 16(a) case, *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), to argue that second-degree assault does not qualify as a crime of violence because it may be accomplished by indirect force. *Singh*, however, necessarily, and explicitly, rejected this argument when it found that second-degree assault under N.Y.P.L. § 120.05(2) was a crime of violence under § 16(a). 939 F.3d at 463 ("[I]ndirect methods of inflicting serious physical injury still meet the physical force requirement of § 16(a)."). Moreover, the view of "force" set forth in *Chrzanoski* was subsequently modified by our Court in light of the Supreme Court decision in *United States v. Castleman*, which held that physical force in the context of a misdemeanor crime of domestic violence "encompasses even its indirect application." *Villanueva v. United States*, 893 F.3d

8

123, 130 (2d Cir. 2018) (quoting *Castleman*, 572 U.S. 157, 170 (2014)); *see also United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018) (recognizing the *Chrzanoski* court "did not have the benefit of the Supreme Court's reasoning in *Castleman*").

Tabb's alternative *Chrzanoski*-based argument -- that second-degree assault under N.Y.P.L. § 120.05(2) is not categorically a crime of violence because it can be committed by omission -- is no more successful. In *Singh*, the Court requested supplemental briefing on "whether NYPL § 120.05(2) allows for the imposition of liability based on a defendant's omission to act." *Singh*, 939 F.3d at 463. Neither the parties nor the panel were able to find a single example of such liability being imposed. *Id.* Indeed, the panel explained that "it is nearly impossible to conceive of a scenario in which a person could knowingly or intentionally injure, or attempt to injure, another person with a deadly weapon without engaging in at least some affirmative, forceful conduct." *Id.* at 463-64 (quoting *United States v. Ramos*, 892 F.3d 599, 612 (3d Cir. 2018)). Thus, notwithstanding Tabb's objections, we find that the substantive crime of second degree assault under N.Y.P.L. § 120.05(2) "has as an element the use, attempted use or threatened use of physical force against the person of another" and is categorically a crime of violence under U.S.S.G. § 4B1.2.

We next examine whether *attempted* second degree assault under N.Y.P.L. § 120.05(2) may nonetheless not categorically be a crime of violence. We reject this possibility. *Walker*, although an ACCA case, squarely held that attempted second-degree assault under N.Y.P.L. § 120.05(2) requires the attempted use of physical force "on any reasonable interpretation of that term." 442 F.3d at 788. This essentially precludes finding that New York attempted second-degree assault does not have "as an element the . . . attempted use . . . of physical force against the person of another" under U.S.S.G. § 4B1.2.

Recognizing that application of *Walker*'s holding would negate his argument, Tabb offers a number of reasons why it is not controlling here. None is persuasive. Tabb first argues that *Walker* is not controlling because the *Walker* Court did not discuss the statutory definition of "dangerous instrument," which can include substances that can cause death or physical injury without the use of any force. As discussed above, however, the Supreme Court has rejected the notion that the use of poison or another indirect application of force does not involve the use of physical force, *see Castleman*, 134 S. Ct. at 1414, and the Second Circuit has recognized and adopted this holding in multiple statutory contexts.

10

*See Villanueva*, 893 F.3d at 128-29 (ACCA); *Hill*, 890 F.3d at 59-60 (18 U.S.C. § 924(c)(3)(A)).

Tabb next argues that an intervening Supreme Court case, *Johnson v. United States*, 559 U.S. 133 (2010), effectively abrogated *Walker*. In *Johnson*, the Supreme Court clarified that "physical force" means "*violent* force -- that is, force capable of causing physical pain or injury to another person." *Id.* at 140. However, *Walker* held that attempted assault in the second degree necessarily involves an attempt to use such physical force "on any reasonable interpretation of that term." *Walker*, 442 F.3d at 788. For this reason, this Court has already rejected, albeit in an unpublished opinion, the notion that *Johnson* abrogated *Walker*. *See Brunstorff v. United States*, 754 F. App'x 48, 50 (2d Cir.), *cert. denied*, 140 S. Ct. 254 (2019). We agree.

Finally, Tabb argues that *Walker* is not controlling because "attempt" under New York law is broader than the generic "attempt" described in the guidelines. Thus, Tabb argues, a defendant could be convicted of attempted assault in the second degree in New York without ever "attempt[ing]" to use physical force in the sense defined in the sentencing guidelines.[4]

---

[4] Although this argument is essentially a veiled request to overrule *Walker*, we nonetheless address and thereby reaffirm *Walker*'s holding and clarify its scope.

The elements of New York attempt, however, are no broader than generic

attempt. The Second Circuit has found that generic attempt is "the presence of

criminal intent and the completion of a substantial step toward committing the

crime." *Sui v. INS*, 250 F.3d 105, 115 (2d Cir. 2001). New York attempt requires

intent to commit the crime and an "action taken by an accused [] 'so near [the

crime's] accomplishment that in all reasonable probability the crime itself would

have been committed.'" *United States v. Pereira-Gomez*, 903 F.3d 155, 166 (2d Cir.

2018) (quoting *People v. Mahboubian*, 74 NY.2d 174, 196 (1989)). The Second

Circuit has held that this latter element of New York attempt "categorically

requires that a person take a 'substantial step' toward the use of physical force."

*United States v. Thrower*, 914 F.3d 770, 777 (2d Cir. 2019) (per curiam).[5] Thus, the

elements of New York attempt are the same as or narrower than generic attempt,

_____

[5] Tabb's citation to *People v. Naradzay*, 11 N.Y.3d 460 (2008), in which an individual was convicted of attempted murder without ever having been in the presence of his victims, does not change this outcome. Someone can take a "substantial step" towards using force against a victim even if that victim is not physically present at that moment, for example by "load[ing] a firearm and then start[ing] towards the person to be assailed." *People v. Sullivan*, 173 N.Y. 122, 136 (1903).

and attempted assault in the second degree under New York law categorically involves the "attempted use . . . of physical force" under U.S.S.G. § 4B1.2.

For the foregoing reasons, we find that attempted assault in the second degree under N.Y.P.L. § 120.05(2) is categorically a crime of violence under the Force Clause of U.S.S.G. § 4B1.2. Tabb's conviction under this statute thus properly served as a predicate for his sentencing enhancement.

B. Tabb's Conviction for Narcotics Conspiracy Under 21 U.S.C. § 846

Tabb also argues that his conviction for conspiracy to distribute and possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 ("Section 846") cannot qualify as a predicate "controlled substance offense" under U.S.S.G. § 4B1.1. As defined in U.S.S.G. § 4B1.2, a controlled substance offense is:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Application Note 1 of the commentary clarifies that controlled substance offenses "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1. The plain text of U.S.S.G. § 4B1.2 as interpreted by Application Note 1 thus appears to include narcotics

13

conspiracies such as 21 U.S.C. § 846. Tabb nonetheless argues that narcotics conspiracy under Section 846 is not encompassed by this definition, and is thus not a proper predicate for a sentencing enhancement.

Tabb first argues that narcotics conspiracy under 21 U.S.C. § 846 is not a proper predicate conviction because Application Note 1 conflicts with the Guidelines text by improperly expanding it. *See Stinson v. United States*, 508 U.S. 36, 45 (1993) (holding that Guidelines commentary is valid and binding on the judiciary unless it is "plainly erroneous or inconsistent with" the Guidelines text). This argument, however, is foreclosed in this Circuit by *United States v. Jackson*, 60 F.3d 128 (2d Cir. 1995). In *Jackson*, this Court directly addressed and dismissed the argument that "the Sentencing Commission exceeded its statutory mandate . . . by including drug conspiracies as controlled substance offenses." *Id.* at 131.

Although Tabb attempts to argue that *Jackson* only addressed the Sentencing Commission's authority, not Tabb's specific argument that Application Note 1 improperly conflicts with the guideline text, this purported distinction is without substance. In our view, there is no way to reconcile *Jackson*'s holding that the Commission had the "authority to expand the definition of 'controlled substance

14

offense' to include aiding and abetting, conspiring, and attempting to commit such offenses" through Application Note 1, *id.* at 133, with Tabb's proposed holding that the Guideline text forbids expanding the definition of a controlled substance offense to include conspiracies.

To be sure, *Jackson* only applies in the Second Circuit. Tabb correctly notes that the Sixth and D.C. Circuits have recently agreed with Tabb's argument that Application Note 1 conflicts with the text of U.S.S.G. § 4B1.2(b) by including crimes that the Guideline text excludes. *See United States v. Havis*, 927 F.3d 382, 385-87 (6th Cir. 2019) (en banc) (per curiam); *United States v. Winstead*, 890 F.3d 1082, 1090-92 (D.C. Cir. 2018); *see also United States v. Crum*, 934 F.3d 963, 966 (9th Cir. 2019) (per curiam) ("If we were free to do so, we would follow the Sixth and D.C. Circuits' lead."). But these decisions are of no moment here, because we, acting as a three judge panel, are not at liberty to revisit *Jackson*. *See Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016) (finding that this Court is "bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by the Supreme Court"). Accordingly, we find that *Jackson* precludes Tabb's argument that Application Note 1 is invalid.

Tabb next argues that even if Application Note 1 is valid, the word "conspiracy" does not encompass his conviction for federal narcotics conspiracy under Section 846.[6] Specifically, he argues that narcotics conspiracy under 21 U.S.C. § 846 is not a predicate "controlled substance offense" under U.S.S.G. § 4B1.1 because the term conspiracy in Application Note 1 encompasses only "generic" conspiracy. To do so, Tabb relies on *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), in which the Fourth Circuit held that Application Note 1 incorporates a generic definition of conspiracy, that generic conspiracy requires an overt act, and that federal narcotics conspiracy under 21 U.S.C. § 846 is not a generic conspiracy because it does not require an overt act. *Id.* at 237-38.[7]

We respectfully disagree. The essence of a conspiracy is an agreement by two or more persons to commit an unlawful act. *See United States v. Praddy*, 725 F.3d

---

[6] The Government argues that *Jackson* forecloses this argument because it affirmed the application of a sentencing enhancement based on a conviction for Section 846 conspiracy. In *Jackson*, however, the defendant "d[id] not challenge the application of the Sentencing Guidelines," *Jackson*, 60 F.3d at 131, but instead focused on whether Applied Note 1 was a proper exercise of the Sentencing Commission's authority. Thus, *Jackson* does not control the specific question of whether the district court erred in finding that Application Note 1's language includes Section 846 narcotics conspiracy.

[7] Norman joined *United States v. Martinez-Cruz*, 836 F.3d 1305 (10th Cir. 2016), which reached the same conclusions with respect to U.S.S.G. 2L1.2. *Id.* at 1310-14.

147, 153 (2d Cir. 2013). Although conspiracy at common law often required that an overt act, however trivial, be taken in furtherance of the conspiracy, Congress has chosen to eliminate this requirement in the case of several federal crimes, most notably narcotics conspiracy. *United States v. Shabani*, 513 U.S. 10, 14-15 (1994).

The text and structure of Application Note 1 demonstrate that it was intended to include Section 846 narcotics conspiracy. Application Note 1 clarifies that "controlled substance offenses" include "the offense[] of . . . conspiring . . . to commit such offenses," language that on its face encompasses federal narcotics conspiracy. As the Ninth Circuit recognized in relation to a similar Guideline provision, "To hold otherwise would be to conclude that the Sentencing Commission intended to exclude federal drug . . . conspiracy offenses when it used the word 'conspiring' to modify the phrase" controlled substance offenses. *United States v. Rivera-Constantino*, 798 F.3d 900, 904 (9th Cir. 2015). Such a holding would also require finding that term "conspiracy" includes Section 846 narcotics conspiracy in some parts of the guidelines, *see, e.g.*, U.S.S.G. § 2D1.1; U.S.S.G. § 2X1.1, but not others. "A standard principle of statutory construction provides that identical words and phrases within the same statute should

normally be given the same meaning." *Rivera-Constantino*, 798 F.3d at 905

(quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)).

Moreover, as this Court noted in *Jackson*, interpreting "controlled substance offense" conspiracies to include Section 846 conspiracies harmonizes the Sentencing Commission's intent with congressional intent. This Court upheld Application Note 1 in *Jackson* in part because Section 846 manifested congressional "intent that drug conspiracies and underlying offenses should not be treated differently" by "impos[ing] the same penalty for a narcotics conspiracy conviction as for the substantive offense." 60 F.3d at 133. Reading Application Note 1 as intended to exclude Section 846 conspiracy would place the Sentencing Commission at odds with Congress itself by attaching sentencing enhancements to substantive narcotics crimes but not to the very narcotics conspiracies that Congress wanted treated the same.

To us, it is patently evident that Application Note 1 was intended to and does encompass Section 846 narcotics conspiracy. Tabb's conviction under this statute thus properly served as a predicate for his sentencing enhancement.[8]

---

[8] As a final argument, Tabb urges that because it is at least arguably ambiguous whether his prior offenses qualify as predicate offenses under U.S.S.G. § 4B1.1, the rule of lenity requires us to interpret the sentencing guidelines in his favor. The rule of lenity, however, is a tool of last resort "reserved for cases where,

18

III.     <u>Conclusion</u>

For the foregoing reasons, the district court correctly concluded that Tabb's

convictions for attempted assault in the second degree under N.Y.P.L. § 120.05(2)

and federal narcotics conspiracy under 21 U.S.C. § 846 constituted predicate

crimes for purposes of the career offender sentencing enhancement. The district

court's judgment and sentence are AFFIRMED.

---

'after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute.'" *DePierre v. United States*, 564 U.S. 70, 88 (2011) (quoting *Smith v. United States*, 508 U.S. 223, 239 (1993)). As described above, this Court's prior precedent, along with traditional rules of statutory interpretation, resolve any ambiguity in the sentencing guidelines decidedly against Tabb. Accordingly, the rule of lenity has no application here. *Id.*