18-3029-cr
United States v. Donque Tyrell

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 4th day of January, two thousand twenty-one.

Present:     ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
             SUSAN L. CARNEY,
                     *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                     *Appellee*,

            v.                                              18-3029-cr

DONQUE TYRELL, AKA POLO RELL,

                     *Defendant-Appellant*.[1]

_____

Appearing for Appellant:     Ruth M. Liebesman, Paramus, NJ.

Appearing for Appellee:      Allison Nichols, Assistant United States Attorney (Jessica Feinstein, Karl Metzner, Drew Skinner, Hagan Scotten, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY.

_____

[1] The Clerk of Court is directed to amend the caption to the above.

Appeal from the United States District Court for the Southern District of New York (Rakoff, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be and it hereby is **AFFIRMED in part, VACATED in part, and REMANDED.**

Defendant-Appellant Donque Tyrell appeals from the October 10, 2018 judgment of conviction in the United States District Court for the Southern District of New York (Rakoff, *J.*) following a jury trial. The jury returned a verdict of guilty on seven counts: racketeering conspiracy in violation of 18 U.S.C. § 1962(d); murder in aid of racketeering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; conspiracy to distribute and possess with intent to distribute narcotics in violation of 21 U.S.C. § 846; distribution of narcotics within one thousand feet of playgrounds and schools, in violation of 21 U.S.C. §§ 846 and 860; and three counts of firearms offenses in violation of 18 U.S.C. § 924(c). Tyrell was convicted of racketeering for his involvement with the Big Money Bosses ("BMB") gang. The district court sentenced Tyrell principally to life imprisonment plus fifty-five years. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Tyrell principally argues on appeal that: (1) the evidence at trial was insufficient to support his murder conviction and one of his firearms convictions; (2) the district court erred in admitting a fellow BMB member's out-of-court statements as a statement against penal interest; (3) the district court erred in excluding an investigating officer's bigoted statements; (4) the district court erred in admitting certain Facebook posts as adoptive admissions; (5) Tyrell's mandatory life sentence is unconstitutional; and (6) Tyrell's firearms convictions must be vacated based on the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). The parties agree that Tyrell's sentence for the two narcotics convictions exceeds the statutory maximum, requiring a limited remand for the purpose of resentencing.

We will uphold a jury verdict on a challenge to the sufficiency of the evidence provided "a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). On such a challenge, a defendant must demonstrate that, viewing all the evidence in the light most favorable to the government, "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (internal quotation marks omitted).

With respect to his murder conviction, Tyrell argues that the physical evidence demonstrates he could not have aided Martin Mitchell in the killing of Keshon Potterfield. However, the government presented testimony from a cooperating witness, Gerard Bass, who described Mitchell's confession to his and Tyrell's involvement in the murder. This alone is sufficient evidence to uphold the verdict. *See United States v. Riggi*, 541 F.3d 94, 110 (2d Cir. 2008) ("[A] conviction may be supported only by the uncorroborated testimony of a single accomplice, if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." (alteration and internal quotation marks omitted)). Furthermore,

there was testimony that placed Tyrell at the scene of the murder, described him handling a gun just prior to the killing, and described him raising that gun and pointing it towards Potterfield. Even absent the direct testimony, there was sufficient evidence to demonstrate Tyrell's involvement in the killing. *See United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) ("A jury may convict on circumstantial evidence alone.").

In response, Tyrell offers the testimony he claims demonstrates the physical impossibility of his involvement in the shooting. The jury was fully entitled to consider the many items of proof the government offered and the defense's alternative theory and determine which version was accurate. "[T]he task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." *McDermott*, 245 F.3d at 137. Tyrell also argues that Bass's testimony is incredible on its face, as he did not offer it in his initial meetings with the Government but remembered it later. This inconsistency as well as the incentives for Bass to testify favorably for the government were fully addressed in cross-examination, and the jury was entitled to determine what weight to give this testimony. *See United States v. Glenn*, 312 F.3d 58, 64 (2d Cir. 2002). Sufficient evidence supported Tyrell's conviction for murder in aid of racketeering.

With respect to one of his convictions for use of a firearm in connection with a crime of violence, Tyrell argues that there was insufficient evidence to prove he committed the underlying crime of attempted assault. Under New York Law, assault with a dangerous weapon is defined as when a person, "[w]ith intent to cause serious physical injury to another person . . . causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." *Id.* § 110.00. New York courts have held that to prove an attempt, "the defendant must have engaged in conduct that came dangerously near commission of the completed crime." *People v. Naradzay*, 11 N.Y.3d 460, 466 (2008) (internal quotation marks omitted). In *People v. Rizzo*, the New York Court of Appeals held that the "defendants were not guilty of an attempt to commit robbery in the first degree when they had not found or reached the presence of the person they intended to rob." *People v. Rizzo*, 246 N.Y. 334, 339 (1927). However, conviction for attempted assault does not require a defendant to come close enough to their victim to pull a trigger.

Here, the government offered evidence that Tyrell discussed the necessity of shootings prior to traveling to a rival gang's territory, filmed himself making gang-related statements while walking through this territory, was present in the area immediately before shots were heard, and was found with a gun and an improvised holster shortly after the shots were reported. In *Naradzay*, the New York Court of Appeals held that a defendant who traveled to his intended victims' home and was arrested near a loaded shotgun was guilty of attempted assault. *See Naradzay*, 11 N.Y.3d at 467–68 (holding a "rational jury could conclude that defendant crossed the boundary where preparation ripens into punishable conduct, a determination that depends greatly on the facts of the particular case" (internal quotation marks and citation omitted)). Here, we have a very similar fact pattern: Tyrell expressed his desire to engage in a shooting, traveled to his intended targets, and was found with a gun. Tyrell argues that the case is distinguishable, because the defendant in *Naradzay* had a detailed to do list of intended crimes. *Id.* at 463. This

3

ignores the videos, the statements of the prior night, Tyrell's history with the rival gang, and the testimony demonstrating his expressed desire to engage in shootings. This is certainly comparable to the list in *Naradzay*, and, here, we have an additional factor: some form of shooting occurred. Reviewing the evidence in the light most favorable to the government, there was sufficient evidence to support the jury's verdict.

The district court admitted Mitchell's statements to Bass describing his and Tyrell's role in the shooting as a statement against penal interest. Mitchell expressed his intention to invoke his Fifth Amendment right to silence due to his pending charges, and Judge Rakoff declared him unavailable. Federal Rule of Evidence 804(b)(3) allows for the admission of statements against penal interest where they are "supported by corroborating circumstances that clearly indicate [their] trustworthiness." Fed. R. Evid. 804(b)(3). Circumstances indicating trustworthiness include where "the statement was made to a person whom the declarant believes is an ally," *United States v. Saget*, 377 F.3d 223, 230 (2d Cir. 2004) (citation omitted); the evidence is corroborated by independent evidence, *United States v. Gupta*, 747 F.3d 111, 128–29 (2d Cir. 2014); and the declaration does not represent an attempt to shift blame by the declarant but takes credit for actions committed jointly, *Saget*, 377 F.3d at 230. Every one of these factors is present here, Mitchell believed Bass was his ally as a fellow member of BMB. Mitchell's statements match witness testimony regarding the circumstances of Potterfield's shooting. Mitchell did not shift blame but took credit for his involvement in the shooting. Tyrell argues that the statements were not observed on video surveillance, and the witnesses did not see Tyrell pass the gun. These statements count for little against the corroborating factors, and the district court did not exceed its discretion to find sufficient corroboration to admit the testimony.

On appeal, Tyrell argues that these statements violated his Sixth Amendment confrontation clause rights under *Bruton v. United States*, 391 U.S. 123, 135–36 (1968), and his right to counsel under *Massiah v. United States*, 377 U.S. 201, 203–04 (1964). These arguments fail, as the statements were neither testimonial nor the product of a government interrogation. Tyrell states that because Bass was seeking a cooperation agreement at the time, any statements made to him were testimonial. This is incorrect. Testimonial statements are formal statements to law enforcement that an individual would expect to be used for prosecution. *See Crawford v. Washington*, 541 U.S. 36, 52–53 (2004). Our court has held that the confrontation clause has no applicability outside of testimonial statements, including in a situation where a defendant's non-testimonial self-incrimination implicates another defendant. *See United States v. Williams*, 506 F.3d 151, 156–57 (2d Cir. 2007). With respect to his *Massiah* arguments, the parties agree that Bass was not a cooperating witness at the time of the confession. Therefore, *Massiah* has no applicability in this setting. *See United States v. Stevens*, 83 F.3d 60, 64 (2d Cir. 1996) ("[T]o treat every inmate who hopes to cut some future deal as a government informant is to extend the idea behind *Massiah* far beyond its natural reach, and that we are not willing to do." (internal quotation marks omitted)). As the statements were non-testimonial and admissible as statements against penal interest, there was no error in admitting them.

Tyrell sought to introduce racist tweets from one of his arresting officers, David Sammarco, who maintained a twitter account, "ObamaHater55." App'x at 250. Numerous tweets revealed explicit racial prejudice. The district court blocked cross examination on this point, finding that the tweets were not relevant. The district court pointed out that Sammarco testified

4

that he stopped Tyrell near rival gang territory, and he recovered a gun near the scene. Tyrell did not dispute either of these facts, so the district court found no basis to introduce potentially inflammatory testimony. District courts have "broad discretion in controlling the scope and extent of cross-examination." *United States v. Caracappa*, 614 F.3d 30, 42 (2d Cir. 2010) (citations omitted). The district court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks and citations omitted). In his argument for why this necessitates reversal, Tyrell does not identify any specific facts that he is disputing beyond a single statement that Tyrell allegedly made to Sammarco.

Given the broad discretion we provide district courts on evidentiary matters and the minimal potential probative value of these tweets, the district court did not abuse its discretion in excluding this testimony. Furthermore, Sammarco's partner corroborated his testimony regarding the gun and the arrest. While Sammarco's bigoted tweets raise substantial questions as to his ability to serve as a law enforcement officer, the district court was within its discretion in excluding cross-examination on this point.

Tyrell challenges the district court's admission of certain Facebook posts attributed to his account. In one of the posts on his account, Tyrell criticized those who did not act to avenge a fellow BMB member against rivals. Tyrell argues that admission was improper, as he was incarcerated when this post was made. The district court admitted the statement as an adoptive admission, as it contained indications that it came from him or someone speaking on his behalf and was consistent with other posts. Federal Rule of Evidence 801(d)(2)(B) provides that a statement is not hearsay if "(t)he statement is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). An individual can manifest an intent to adopt an admission through silence. We have held that where an individual is silent regarding an incriminating statement seemingly made on his behalf, we will find an adoptive admission on the assumption that a person will at least deny incriminating statements. *United States v. Shulman*, 624 F.2d 384, 390 (2d Cir. 1980).

Assuming that Tyrell was unable to author the post in question, it was still properly admitted as an adoptive admission. The post was a first-person statement on his Tyrell's Facebook account, in his own style of voice, with references to his life. The post was clearly intended to convey that Tyrell was the individual making this statement. The statement was incriminating, implying that others had never picked up a gun in defense of the fallen BMB member, as opposed to the speaker who would. The post was never removed from the account, and there is no indication anywhere that Tyrell suggested that he objected to its content. The district court was well within its discretion in admitting this statement.

Tyrell appeals from his mandatory life sentence based on *Miller v. Alabama*, 567 U.S. 460 (2012), where the Supreme Court held mandatory life sentences for those under 18 at the time of their crimes was a violation of the Eight Amendment. Our court has already held that *Miller* does not apply to individuals like Tyrell, who were 19 at the time of the offense. *See United States v. Sierra*, 933 F.3d 95, 97 (2d Cir. 2019) ("Since the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences, the

defendants' age-based Eighth Amendment challenges to their sentences must fail." (citation omitted)).

Tyrell also appeals his Section 924(c) convictions based on the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). A defendant violates Section 924(c) if he uses or carries a firearm during and in relation to, or possesses a firearm in furtherance of, a "crime of violence" or "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). Section 924(c)(3) defines crime of violence as a crime that is a federal felony offense and either: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id*. § 924(c)(3). In *Davis*, the Supreme Court struck down Subsection B as impermissibly vague. Tyrell's first Section 924(c) conviction was in connection with his use and possession of the firearm in furtherance of his narcotics conspiracy and narcotics distribution convictions, which are unaffected by *Davis*. *See id*. § 924(c)(2) (defining a "drug trafficking crime").

Tyrell's sixth and seventh counts of conviction are based on use of a firearm in connection with crimes of violence. Tyrell's sixth count of conviction was based on an underlying offense of attempted assault with a deadly weapon in violation of New York law. Our court has previously stated that attempt to cause physical injury by means of a deadly weapon is necessarily an attempt to use violent force under New York law. *See United States v. Walker*, 442 F.3d 787, 788 (2d Cir. 2006) (finding attempted second-degree assault with a dangerous weapon under New York law to be a crime of violence under the Armed Career Criminal Act); *see also Singh v. Barr*, 939 F.3d 457, 461–62 (2d Cir. 2019) (finding second-degree assault with a dangerous weapon under New York law to be a crime of violence in the immigration context). Accordingly, the sixth count of conviction was not disturbed by *Davis*.

The seventh count of conviction was for use of the firearm "in relation to an assault with a deadly weapon and/or attempted robbery" in violation of Section 924(c). App'x at 272. The underlying offense was the attempted robbery of livery cab driver Dennis Isler on September 1, 2014, during which Tyrell pulled a gun on Isler, hit him in the head with it causing a substantial injury, and then fled after Isler wrestled with him for the gun. Although we have not yet determined whether attempted Hobbs Act robbery is a categorical crime of violence, we have previously held that a Section 924(c) conviction can stand when the attempted robbery is inextricably intertwined with another valid predicate offense. *See United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016) (determining that "[e]ven if Hobbs Act robbery were not a categorical crime of violence," the Section 924(c) conviction could stand because "the robbery was an act inextricably intertwined with . . . the charged narcotics conspiracy"). Because we find that the attempted robbery was inextricably connected with the assault with a deadly weapon, *Davis* does not require reversal on this count.

Finally, the parties agree that the district court erred in its sentencing calculations with respect to Tyrell's narcotics convictions. Tyrell was convicted only of distributing and conspiring to distribute less than 50 kilograms of marijuana on the two narcotics counts, which carry maximum sentences of five and ten years' imprisonment, respectively. The district court

6

imposed concurrent sentences of twenty-five years on each count, exceeding the statutory maximum. The error was plain and requires resentencing.

We have considered the remainder of Tyrell's arguments and find them to be without merit. Accordingly, the judgment of conviction is hereby AFFIRMED; Tyrell's sentence is VACATED insofar as it exceeded the statutory maximum with respect to his narcotics convictions; and we remand for resentencing. Judgment AFFIRMED in part, VACATED in part, and REMANDED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk